NALLEY v. THROCKMORTON.

4-8423                                                     206 S. W. 2d 455

Opinion delivered December 15, 1947.

*T. J. Gentry,* for appellant.

*Otis H. Nixon,* for appellee.

GRIFFIN SMITH, Chief Justice. V. C. Throckmorton, H. E. Adams, and C. M. Griffin are members of the uniform force of the Little Rock Fire Department and constitute the adjustment committee for the Department. In July 1947 they asked that G. L. Nalley as Chief be re-

strained from requiring them—presumptively upon penalty of discharge or discipline in the event of refusal—to work in excess of seventy-two hours during a week, except in case of emergency. The petitioners rely upon Act No. 240, approved March 18, 1947. From a decree granting the relief prayed for the Chief has appealed.

Act 240 amends § 9853 of Pope's Digest. The first paragraph of the Digest section is unchanged by the amendatory Act. The second paragraph of Act 240 is identical with the Digest, each reading: "The head or chief officer of the fire department shall so arrange the working hours of the employees of such fire department so that each employee shall work, as near as practical, an equal number of hours per month." At this point the 1947 Act, after a semicolon, contains the following, not found in the former statute: "but not to exceed seventy-two hours per week." The remainder of the paragraph and section is unchanged in substance. The law as amended is made to read as follows:

"The head or chief officer of the fire department shall so arrange the working hours of the employees of such fire department so that each employee shall work, as near as practical, an equal number of hours per month; *but not to exceed seventy-two hours per week*; provided that the head or chief officer of such fire department, may at his discretion, in case of epidemic [,] conflagration, or such emergency, require such employees for a greater period than herein provided, to continue on duty during such epidemic, conflagration [,] or like emergency."

The emergency clause found that because firemen had been required to work "an excessive number of hours each week" it was necessary to the public safety that the amendment become immediately effective.

We are dealing with an Act that added nine words to existing statutes, and then explained that because practices subversive to the public safety were being followed the measure should be put into effect "from and after its passage and approval."

The action brought by plaintiffs has nothing to do with salaries or claims for overtime. The men work in

twenty-four hour shifts or assignments, beginning at eight o'clock in the morning. For example, a shift or platoon beginning Monday would be on duty until Tuesday morning at eight, then off until Wednesday morning, off again Thursday, on Friday, off Saturday, and on Sunday. It will thus be seen that Monday and Monday night would constitute a twenty-four hour period, Wednesday and Wednesday night would involve a second period of like duration, and Friday and Friday night would bring the total number of hours to seventy-two. But, under the rule complained of, the platoon is again subject to duty Sunday morning. Result is that aggregate hours substantially exceed the statutory limitation.

Appellant's first contention is that evidence does not sustain the contention that, if required to report for a 24-hour shift each alternate day, the men *work* more than 72 hours a week. It is insisted that a distinction should be drawn between *actual* work and the period of duty. At least eight hours of the 24 are spent sleeping, or in an attempt to do so; but, says counsel, work and sleep are antithetical; hence, if to an assignment during which members of a platoon have admittedly spent a designated period in sleep a demand for actual work for a time not in excess of that taken for sleep is added, the law has not been violated and the employe cannot complain.

Attention is directed to Rule 50. It provides that if a fireman when not on duty elects to sleep at the station, he must respond to an alarm just as though the call had been made during his duty period. This, it is argued, is evidence that sleeping time has been construed by the firemen as being on a different basis from that part of the 24-hour period when retirement rest is not involved. The construction, says appellant, finds support in wording of the Act directing the Chief to "so arrange the working hours of the employees . . . so that each shall work, as near as practical, an equal number of hours per month."

In appellant's brief the words "working" and "work" used in that part of the statute from which the quotation is taken, are italicized, with the explanation

that the emphasis has been supplied. Perhaps if in enacting the legislation the General Assembly had seen fit to particularize in respect of these words and had disclosed a purpose to have them stressed, strength would be given the argument that actual physical employment involving application to a designated duty was intended. This emphasis, however, was not indicated, and we are given no intimation that the lawmakers contemplated any purpose other than to limit to seventy-two hours the time a uniformed member of the force should be required to be on duty during a week, unless there is an emergency. Half of a weekly period of 168 hours is 84, or 12 hours more than the maximum to which, under the statute, work is restricted.

It is insisted that the limitation of 72 hours contained in Act 240, if construed as such and enforced, would necessitate the use of a third platoon, and this was not intended, being in conflict with the direction that "The uniformed force of the Fire Department shall be divided into two platoons." But, if the express language of the amendment goes only to the proposition that work hours shall not exceed 72 in any week, we must presume there was an intent to have the Act construed in such manner as to give effect to the only change it made in the corresponding section of Pope's Digest. If the result of applying the legislative will necessitates the doing of something else—a thing not affirmatively prohibited—we must assume there was a plan to accomplish the particular end the Act sought to achieve. The mechanics would be left to the City.

Appellant's second objection to the decree is that under the Chancellor's construction the Act "legislates upon a subject which is beyond the power and authority of the legislature to control or administer, . . . [in that it] seeks to control a non-governmental, i. e., a proprietary or private function of a municipal government, and such an Act would deprive the citizens . . . of Little Rock of their property without due process of law" in violation of State and Federal constitutions.

In support of this contention it is shown that the City owns property utilized for fire fighting and fire prevention purposes, and that judicial construction of an Act which inevitably requires the employment of additional men is a deprivation of property without due process because the City is forced to spend additional money.

Act 240 applies with uniformity to all cities of the First Class. It does not direct the employment of a designated number of men, or say that they shall be paid a fixed compensation according to rank, period of service, or the responsibility imposed. The word "platoon" is not construed. The requirements of one station might be, and usually are, greater than those of another. The City determines all matters relating to its essential and incidental internal affairs, under authority granted by the General Assembly.

The Constitution, Art. 12, § 3, is a delegation to the Legislature of authority to provide by general law for the organization of cities and their classification. *Hendricks* v. *Block,* 80 Ark. 333, 97 S. W. 63. A municipality may not be authorized to pass a law contrary to the general laws of the State. See *Bennett* v. *City of Hope,* 204 Ark. 147, 161 S. W. 2d 168, where § 4 of Art. 12 of the Constitution is cited. The Constitution does not directly invest municipal corporations with power to maintain an agency such as we are dealing with here, and then by implication say that because personnel is employed by a city, or under civil service regulations, those affected are not subject to general laws enacted in the interest of public safety. Such a construction would endow the created with powers greater than its creator.

The fact that enforcement of a law of general application to all classified cities may, as a practical proposition, compel the employment of additional firemen does not render the legislative mandate void for want of due process, or for any other reason.

Affirmed.