STEPHENS v. BORGMAN, Chairman State Board of Public Affairs, et al

No. 33774. July 12, 1949.
Rehearing Denied Sept. 28, 1949.

210 P. 2d 176.

Paul W. Updegraff, of Norman, for plaintiff in error.

42

Mac Q. Williamson, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for defendants in error.

GIBSON, J. This is an appeal from a judgment denying plaintiff's application for injunctive relief. The parties will be referred to as they appeared in the trial court.

Plaintiff brought this action for herself and all other persons similarly situated against the members of the State Board of Public Affairs, her employers, to restrain them from requiring her to work more than eight hours a day. The Commissioner of Labor of the State of Oklahoma filed his petition of intervention for and on behalf of and in aid of the plaintiff and all such other persons similarly situated. The action was predicated upon an alleged violation of section 1 of article 23 of the Constitution of the State of Oklahoma, as follows:

"Eight hours shall constitute a day's work in all cases of employment by and on behalf of the State or any county or municipality."

And of section 3 of Tit. 61 O. S. 1941, as follows:

"Eight hours shall constitute a day's work for all laborers, workmen, mechanics, prison guards, janitors of public institutions, or other persons now employed or who may hereafter be employed by or on behalf of the State, by or on behalf of any county, city, township or other municipality, except in cases of extraordinary emergency which may arise in time of war, or in cases where it may be necessary to work more than eight hours per calendar day for the protection of property or human life: Provided, that in all such cases the laborers, workmen, mechanics or other persons so employed and working to exceed eight hours per calendar day shall be paid on the basis of eight hours constituting a day's work; Provided, Further, that not less than the current rate of per diem wages in the locality where the work is performed shall be paid to laborers, workmen, mechanics, prison guards, janitors in public institutions, or other persons so employed by or on behalf of the State, or any county, city, township, or other municipality; and laborers, workmen, mechanics, or other persons employed by contractors or subcontractors in the execution of any contract or contracts with the State, or with any county, city, township, or other municipality thereof, shall be deemed to be employed by or on behalf of the State, or of such county, city, township, or other municipality."

The evidence disclosed that plaintiff was employed as an attendant at the Oklahoma Central State Hospital at Norman, Oklahoma, and that she was required to work twelve hours per day, six days per week; that her salary was $85 per month and board and room. That her salary was based on thirty days' work per month and for every day's absence her pay was reduced in that proportion. That she went to work at 6 o'clock a.m. and quit at 6 o'clock, p. m., each day of the week except Thursday.

The defendant's answer denied that plaintiff's services as such attendant were within the intendment of the above section. And it is alleged that, in event the court should decide that plaintiff's services are within the intendment thereof, the injunction should not be granted because, by reason of the fiscal affairs of the state, the granting of the injunction would be inequitable under the circumstances.

The trial court found that the employment of the plaintiff was within the purview of the statute but refused to grant the injunction upon the ground that the public interest would be adversely affected.

Plaintiff prosecutes this appeal, and for reversal contends that the court erred in not granting the injunction. Defendants contend that the judgment should be affirmed not only because of the reasons assigned by the court but for the further reason plaintiff's service is not within the purview of said statute, and urges that, since the refusal to grant the injunction is correct, for that reason alone the reason given by the court is not controlling.

We deem it unnecessary to determine the question whether the services performed by the plaintiff are within the provisions of said section 3. Conceding, for the purpose of the argument only, that plaintiff's employment is within the purview of the statute, we are of the opinion that the facts not only fail to disclose any grounds for an injunction as prayed, but show that no such grounds exist.

It is said in plaintiff's brief that this is a "suit for injunction to prevent the State Board of Public Affairs from working state employees in excess of eight hours per day." In effect it is a suit to enforce what is deemed to be the policy of the statute by requiring compliance therewith by officials upon whom the duty to enforce it is imposed.

Unless statutory authority therefor exists the plaintiff cannot invoke the injunction except upon grounds recognized by courts of equity. Equitable grounds for an injunction in a case such as this are stated in 28 Am. Jur. 356, §166, as follows:

"There is no doubt but that equity will exercise jurisdiction to restrain acts or threatened acts of public corporations or of public officers, boards, or commissions which are ultra vires and beyond the scope of their authority, outside their jurisdiction, unlawful or without authority, or which constitute a violation of their official duty, whenever the execution of such acts would cause irreparable injury to, or destroy rights and privileges of, the complainant, which are cognizable in equity, and for the protection of which he would have no adequate remedy at law."

This doctrine was recognized by this court in Wentz et al. v. Ingenthron et al., 146 Okla. 165, 294 P. 154, 158, where there is quoted with approval the following:

" 'When officers of the state act under invalid authority, or exceed or abuse their lawful authority, and thereby invade private rights that are secured by the Constitution, an action to redress injuries caused by the unauthorized act is not a suit against the state, since the acts of officials that are not legally authorized, or that exceed or abuse authority or discretion conferred upon them, are not acts of the state.' Louisville & Nashville Ry. Co. v. R. R. Commissioners, 63 Fla. 491, 58 So. 543, 44 L. R. A. (N.S.) 189."

To establish her right to the injunction plaintiff relies solely upon the holdings in Fleming, Administrator of the Wage and Hour Division, U. S. Dept. of Labor, v. A. B. Kirschbaum Co. (3 Cir.) 124 Fed. 2d 567; State Bar of Oklahoma v. Retail Credit Ass'n et al., 170 Okla. 246, 37 P. 2d 954, and Curtis v. Registered Dentists of Oklahoma, 193 Okla. 233, 143 P. 2d 427.

In the Federal case the injunction was sought and granted in pursuance of the power granted by section 17 of the Fair Labor Standards Act of 1938 (29 U. S. C. A. §217). By the terms of that Act irreparable injury as ground for the injunction need not be shown. The rule in such situation and its contrast to that which obtains in equity is clearly recognized in Walling, Administrator, etc., v. Peavy-Wilson Lumber Co., Inc., 49 Fed. Supp. 846. In the syllabus it is held:

"No irreparable injury need be shown as a prerequisite to the issuance of a statutory writ of injunction issuing in an action at law in proceedings to enforce provisions of Fair Labor Standards Act. Fair Labor Standards Act of 1938, sec. 17, 29 U. S. C. A. sec. 217."

And it is said in the opinion:

"Finally, we realize fully that what is sought here is the statutory writ of injunction, issuing under an action at law (no irreparable injury need be shown—United States v. City and County of San Francisco, 310 U. S. 16, 30, 60 S. Ct. 749, 84 L. Ed. 1050), and not strictly under the action in equity, familiar to the chancery practice."

Other cases to same effect are digested in footnote to section 217, page 374 of 29 U. S. C. A.

44

In State Bar of Oklahoma v. Retail Credit Ass'n, supra, the absence of financial interest of the Association was urged as ground for denial of the injunction. In response thereto the court declared the protection of the Association's financial interest was not the basis of the action, and further, as follows:

"In keeping with the general plans and purposes of the creation of the plaintiff association, we have no doubt of the authority of the plaintiff to maintain the proceedings and to obtain the relief sought, since the act specifically authorizes the plaintiff to sue and be sued, and authorizes and requires the State Bar to enforce the provisions of the State Bar Act."

In the Curtis case, supra, the only issues involved on the appeal were (1) whether the business being conducted by Curtis was the "practice of dentistry," and (2) and whether the violation of a penal statute could be enjoined. The ground of the plaintiff's right to enjoin was not involved, considered or determined on the appeal.

Thus it appears that the authorities relied on negative rather than support the theory that plaintiff is entitled to ask an injunction on any ground less than that required in equity unless the intervention of the Labor Commissioner as plaintiff furnished authority therefor, concerning which there is nothing said in plaintiff's brief. The Labor Commissioner did not appeal. In the petition of intervention there is no allegation of authority therefor. Our investigation fails to disclose any such authority and the existence thereof appears to be negatived by the statute creating the office (Tit. 40 O. S. 1941 §1), which gives an express definition of his powers within which no power to enforce the provisions of said section 3 is granted.

The decisions relied on are but concrete applications of the rule which is stated in 43 C. J. S. 670, as follows:

"As a general rule if a mere public right is to be vindicated or the mere evasion of law is to be prevented, suit for injunction should be brought by some public officer or body especially charged with a duty in this regard and not by a private individual who is not especially authorized by statute to bring suit under the particular circumstances."

The only basis upon which the plaintiff could be entitled to the injunction is that the effect of the violation of the statute would be to invade a private right of the plaintiff for the protection of which she is entitled to invoke the equitable relief of injunction.

There is neither alleged nor proven any litigable right in the plaintiff other than that, if any, arising by reason of the contractual relation. And the only statement in plaintiff's brief that claims any invasion of plaintiff's right is the requirement to work twelve hours instead of eight, which is declared to be compulsory and therefore violative of the Fifth Amendment of the Federal Constitution. A sufficient answer to this contention is, the hours of service were required by a contract that was voluntarily entered into by the plaintiff. There is nothing upon which to predicate any compulsion by defendants.

Not only was there not shown a litigable right that was invaded but the very existence of any such right is negatived.

Section 3 is substantially the same as that enacted in Kansas in 1891 (Laws 1891, ch. 114.) The Kansas statute, which appears to have been the pattern for the Oklahoma statute, was construed by the Kansas court in 1899, in Re Dalton, 61 Kan. 257, 59 P. 336, and followed since that time. There, a contractor of the county engaged in construction was prosecuted for employing labor for more than eight hours per day, and for defense the constitutionality of the Act was challenged as invading the power of contract. The court said:

"The law for a violation of which the petitioner is prosecuted is to be regarded as a direction by a principal

to his agent,—a matter of concern to the principal and agent alone. . . . In the case of U.S. v. Martin, 94 U.S. 400-404, 24 L. Ed. 128, in passing upon an act of Congress declaring that eight hours shall constitute a day's work for laborers, workmen, or mechanics employed by or on behalf of the government of the United States, the court said: 'We regard the statute chiefly as in the nature of a direction from a principal to his agent that eight hours is deemed to be a proper length of time for a day's labor, and that his contracts shall be based upon that theory. It is a matter between the principal and his agent, in which a third party has no interest.' . . . We see in this law no infringement of constitutional rights. There can be no compulsion of a contractor to bid upon public work, nor is the laborer bound to take employment from a person having such contract. If the terms relating to the hours of labor do not suit either the contractor or the employee, there is no compulsion upon either the one or the other to take the contract, or to perform any labor for the state."

In the Martin case cited in the opinion the rule is stated in the syllabus as follows:

"1. The act of Congress of June 25, 1868 (15 Stat. 77), declaring that eight hours shall constitute a day's work for all laborers, workmen, and mechanics employed by or on behalf of the government of the United States, is in the nature of a direction by the government to its agents.

"2. It is not a contract between the government and its laborers, that eight hours shall constitute a day's work. It neither prevents the government from making agreements with them, by which their labor may be more or less than eight hours a day, nor does it prescribe the amount of compensation for that or any other number of hours' labor."

More clearly in point here is the holding in United States v. Moses (C. C. A.) 126 Fed. 58, which is reflected as follows in the syllabus:

"Neither the eight-hour labor law of August 1, 1892, c. 352, sec. 1, 27 Stat. 340 (U. S. Comp. Stat. 1901, p. 2521), which fixes eight hours as a legal day's work for laborers and mechanics employed by the government, and makes it unlawful for any officer to require or permit a longer day's work, nor article 62, par. 812, of the army regulations, series 1901, providing that eight hours shall constitute a day's work for laborers and mechanics employed by or on behalf of the United States, except in cases of emergency, affects the question of the wages of a laborer or mechanic so employed, which are governed solely by his contract; and if such an employee, whose wages per diem are fixed by his contract, knowingly works more than eight hours per day without any agreement for additional compensation, no such agreement is implied, and neither the statute nor regulation gives him a right to recover additional pay for the overtime."

In view of what has been said, we hold there appears no ground upon which plaintiff is entitled to the injunction sought.

The trial court having properly denied the injunction, its judgment will be affirmed notwithstanding the fact that the court gave the wrong reasons therefor.

Affirmed.

ARNOLD, V. C. J., and WELCH, CORN, and JOHNSON, JJ., concur. DAVISON, C.J., and HALLEY and O'-NEAL, JJ., dissent.

DAVISON, C.J. (dissenting). I cannot concur in the conclusion reached in the majority opinion herein; not that I disagree with any of the principles of law therein set out, but that they are not applicable to the facts in the instant case. The record discloses that plaintiff was required to work twelve hours per day six days per week as an attendant at the Oklahoma Central State Hospital at Norman, Oklahoma, going to work at 6 o'clock a. m. and quitting at 6 o'clock p. m., each day of the week except Thursday. That upon arriving at work in the morning her

routine duties consisted of scrubbing the floors, bathing, feeding and dressing the patients, and that, during her working hours, she was constantly attending the patients with the exception of about 15 minutes which she took off for lunch.

A number of witnesses testified on behalf of plaintiff, all to the effect that the morale of the attendants was very low due to working 72 hours per week; that if they were required to work only 8 hours per day the patients would receive more and better treatment and the patients would be afforded better opportunities for rehabilitation. That the average age of attendants is past 50 years and that the last four hours of their day's work is the hardest because they are on their feet almost constantly and are slightly tired at the end of eight hours and almost exhausted at the end of the 12 hour shift.

Section 5 of Title 61 O.S. 1941 provides a penalty for the violation of section 3 quoted in the majority opinion. Kansas apparently is one of the few states wherein the extent of application of the eight hour day provision of similar enactments has been before the courts. In the early case of State ex rel. v. Martindale, 47 Kan. 147, 27 P. 852, it was held that the statute was penal and should be strictly construed. Therefore, its terms did not embrace the guards at the State Penitentiary. Susequently, however, in the case of State ex rel. v. City of Ottawa, 84 Kan. 100, 113 P. 391, the earlier opinion was seriously criticized and it was there held:

". . . It is a human life, health, and welfare statute to be given a beneficial interpretation for the public good. Of course, it does not apply to cases not within the contemplation of the Legislature, but the language used should be interpreted liberally to promote the true legislative purpose, notwithstanding the fact that a violation of the act is punishable as a misdemeanor. However this may be, the act is not extended beyond its terms by the interpretation which has been adopted. A complete list of the persons embraced was not attempted. Three general groups of a popularly understood character were named. Then all other workmen of like kind were expressly included by the term 'other persons'. Officers are excluded by the use of the word 'employed', an office being distinguished from an employment, in that it implies tenure, duration, emolument, and duty; . . ."

And also:

"An argument is made that because these employees are paid by the month the statute has not been violated. The principal authorities cited are Exodus, Deuteronomy, and Leviticus. Much as it respects the laws referred to, the court feels that it is bound by the act of the Kansas Legislature regulating labor under the sociological conditions existing in this state. The statute specifies laborers, workmen, mechanics, and employees of like kind. The persons intended are characterized by the kind of work they do, rather than by the incidental fact of how often wages are paid. The statute cannot be evaded by calling compensation 'salary', and making it payable at long intervals."

This is a logical interpretation of the act. The record conclusively shows that plaintiff had no special training or instruction before entering the employment of the defendants. Her work consisted principally in keeping the building clean and in caring for the disabled inmates. All of her duties were those which are normally classified as common labor.

As to the application of the doctrine of ejusdem generis in the interpretation of statutes, this court, in the case of Kansas City Southern Ry. Co. v. Wallace, 38 Okla. 233, 132 P. 908, 46 L.R.A. (N.S.) 112, discussed the matter at length in considering the mechanic's lien statute. It was there necessary to determine the meaning of the words "other person" when used in the phrase "Every mechanic, builder, artisan, workman, laborer, or other person. . ." After stating that "It is a fundamental rule that courts favor a

construction which will render every word operative rather than one which makes some words idle and nugatory," the Supreme Court of Missouri was quoted with approval as follows:

"The rule of ejusdem generis is . . . resorted to merely as an aid in construction. If, upon consideration of the whole law upon the subject, and the purposes sought to be effected, it is apparent that the Legislature intended the general words to go beyond the class specifically designated, the rule does not apply. If the particular words exhaust the class, then the general words must have a meaning beyond the class or be discarded altogether.' " State v. Smith, 233 Mo. 242, 135 S.W. 465, 33 L.R.A. (N.S.) 179.

Clearly then, the Legislature intended, by the passage of the section of the statutes, and the framers of the Constitution, by the adoption of the constitutional provision, both quoted in the majority opinion, that a person doing such work as was plaintiff should not be required to spend more than eight hours per day at her employment, unless because of emergency.

In holding that an employee could not recover for overtime work in excess of eight hours per day, in violation of a similar provision, the Arizona court, in the case of City of Glendale v. Dixon, 51 Ariz. 206, 75 P. 2d 683, said:

"Both the eight-hour and the minimum wage provisions of the law become a part of every contract of employment between a manual or mechanical laborer and the state or the political subdivision employing him, and any agreement that his wages shall be less than the minimum or the hours greater than eight a day in the absence of an emergency ignores and departs from them to that extent and, in so far as it does this, is void and unenforceable. It should never be overlooked that both the eight-hour and the minimum wage laws were passed for the benefit of labor, and in construing them the court should always keep in mind the purpose they were intended to accomplish. The hours one may work when doing manual or mechanical labor for the state or any of its political subdivisions were limited to eight for two reasons, the health of the workman and the distribution of labor, and it must be apparent to everyone that if a person is permitted to work longer than this, either with or without pay for the excess time, neither of these ends will be accomplished. To hold, therefore, that appellee, notwithstanding his violation of the law in working more than eight hours a day in the absence of an emergency and of appellant's in permitting him to do so, may recover from the latter the minimum wage per diem for the extra time, would mean that any other employee of the state or any of its political subdivisions would have the same right, and it does not take the wisdom of a Solomon to realize that the result of this would be that the state would no longer have an effective eight-hour law. It is far more important to labor from a standpoint of health and the division of work that the eight-hour law be preserved than it is that an occasional violator of it be permitted to recover for the time he spends in transgressing it. One who works more than eight hours a day when no emergency exists not only defeats the law so far as it pertains to health but deprives some other person of the opportunity to work the extra hours and earn a living for himself and family.

"And to render it doubly sure that no manual or mechanical laborer in the employ of the state or any of its political subdivisions may work longer than eight hours a day, either of his own volition or through the demand of his employer, except in emergencies, the Legislature went further in chapter 12, supra, than to make such acts unlawful and contrary to the statute, and in section 7 thereof, amending Rev. Code 1928, Sec. 1353, made it a penal offense. . . ."

It will thus be noted that plaintiff, in seeking relief, would be limited to instituting criminal actions for the violations of the statute unless she can prosecute the present action. The Utah court also denied plaintiff relief in an action for recovery on a quantum meruit basis for services performed in excess of eight hours per day in the

case of Short v. Bullion-Beck & Champion Min. Co., 20 Utah, 20, 57 P. 720. In the case of Village of Medina v. Title Guaranty & Surety Co., etc., 136 N.Y.S. 786, the city sought to recover on a contractor's bond for wages paid by the city upon default by the contractor constructing sewers. The court denied the relief sought on the ground that the contract of employment was void because the employees were hired to work more than eight hours per day and, the contract being void, there was no obligation on the part of the city to pay the wages and consequently no liability on the part of the surety to reimburse the city.

The Supreme Court of the United States, in Holden v. Hardy, 169 U. S. 366, 42 L. Ed. 780, in discussing the constitutionality of a statute fixing 8 hours as a working day for miners, said:

"But the fact that both parties are of full age and competent to contract does not necessarily deprive the state of the power to interfere where the parties do not stand upon an equality, or where the public health demands that one party to the contract shall be protected against himself. 'The state still retains an interest in his welfare, however reckless he may be. . .' "

Perhaps, originally, plaintiff could not have prosecuted this action, but as pointed out in 28 Am. Jur. 216:

"While it is an established principle that the power of a court of equity to issue injunctive relief is to be used sparingly and only in clear and plain cases, and that the court, because of the extraordinary character of the remedy, is to act with deliberation and caution, yet the modern authorities make it manifest that the rules of equity have grown less strict in respect of the interference by a court of equity by way of injunction to restrain repeated wrongful acts—even purely mandatory injunctions are now granted on clear showing made, where a defendant is guilty of a continuing wrong or threatens repeated perpetration of wrongs."

This interpretation of the power of a court of equity to grant injunctive relief was relied on in the case of Hogan v. Nashville Interurban Railway Co., 131 Tenn. 244, 174 S. W. 1118, L.R.A. 1915E, 788, wherein it was held that

"Equity has jurisdiction to prevent a carrier from excluding from its cars a person who has occasion to use them in his daily travel between his home and place of business, to prevent a multiplicity of suits,"

and in the body of the opinion the present rule is stated

"The modern authorities make it manifest that the rules of equity have grown less strict in respect to interference by a court of equity by way of injunction to restrain repeated wrongful acts, and even purely mandatory injunctions are now granted on clear showing made, where a defendant is guilty of a continuing wrong or threatens repeated perpetration of wrongs which would for remedy at law give rise to a multiplicity of suits, pending the determination of which the wrongs would continue. If a threatened wrong consists of a single act, which will be temporary in effect, the complainant may well be left to his remedy at law for damages. But if persistent repetition of a wrong is threatened, especially by a quasi public corporation, involving discrimination as between citizens, equity will move to afford in a single action its more adequate remedy of injunction.

"Here the remedy sought may be by an injunction prohibitory in form, operating on future conduct, and not, strictly speaking, to restore a status by undoing a past act, and when this may be done a court of equity is less chary in exercising the power."

In Ainsworth v. Munoskong Hunting & Fishing Club, 153 Mich. 185, 116 N. W. 992, 17 L.R.A. (N.S.) 1236, it was held:

"Injunction will lie to prevent threatened repeated wrongful interference with the attempt of a citizen to take wild fowl upon the public navigable waters of the state,"

and in Auburn Draying Co., v. Wardell, 165 N.Y.S. 469, it was held:

"A private individual may enjoin acts violating an express statutory provision."

It is, of course, true that:

" 'Public wrongs are not to be redressed at the suit of individuals who have no other interest in the matter than the rest of the public. To give them a standing in a court of equity, they must allege and show that by the wrong committed they suffer some special damage, or that they have "a special interest in the subject-matter distinct from that of the general public." ' . . . ." (Ruark v. International Union of Operating Engineers, etc., 157 Md. 576, 146 A. 797).

Yet if the plaintiff, as in the instant case, does have "a special interest in the subject matter distinct from that of the general public," she should be permitted to maintain a suit for injunction to prevent repeated wrongs.

In the last-cited case, the City of Baltimore let eight contracts for the construction of sewers by contracts which provided for compliance with the statute establishing an eight hour work day. The men were then required to work ten hours per day and suit for injunction was brought by the officers of a labor union. The employees were not members of the union nor were any of them made parties to the suit. In holding that the plaintiffs could not maintain the action, the court intimated that it could have been maintained if the planitiffs had been employees. The following language was used:

"But not one of the plaintiffs is either a party to any of the contracts or in privity with any of the contracting parties. Nor is a single plaintiff shown to have been employed by the defendants in any labor or in any capacity, at any time, during the building of the public improvements. It follows that the plaintiffs are not suing because of any invasion of a private right of property nor as a result of the infliction of some special injury or damage, distinct from that of the general public, and that no legal or equitable right of the plaintiffs has been infringed. . ."

In the case of Styring v. City of Santa Ana, 64 C.A. 2d 12, 147 P. 2d 689, suit was brought by firemen of the city for a writ of mandamus to compel the city to allow them a leave of absence of four working shifts per month as required by statute. The court granted the relief sought and held that:

"The statute requiring cities, fire districts, etc., having regularly organized, paid fire departments, to grant regular or permanent members thereof leave of absence from active duty of four working shifts in each month is mandatory, and writ of mandate properly issued requiring an unchartered city of the fifth class to grant specified leave of absence to regular and permanent members of city's regularly organized paid fire department. Gen. Laws 1937, Act 2598; St. 1883, p. 93.

"A duty resting on a public official which the law requires him to perform may be enforced by writ of mandate."

There is little difference between an action for a writ of mandamus requiring an employer to grant an employee time off from work and a suit in injunction to prohibit an employer from requiring an employee to work during that same period of time. In fact, the court would have a somewhat broader field of jurisdiction in the injunction suit because it is more truly an exercise of equity powers.

The proposition here under consideration was not raised or discussed in the case of Nalley v. Throckmorton et al., 212 Ark. 525, 206 S.W. 2nd 455, but the same relief was granted as is here sought. In that case the plaintiffs were members of the uniform force of the Little Rock Fire Department and brought suit to restrain the Chief from requiring them to work in excess of 72 hours per week, except in case of emergency, in violation of statutory regulation. The injunction was granted and sustained on appeal.

In the case of Choctaw Pressed Brick Co. v. Townsend, 108 Okla. 235, 236

P. 46, the plaintiff, a brick manufacturer, made application for an injunction to prohibit the defendants, the warden, the deputy warden and the assistant deputy warden of the State Penitentiary, from selling bricks made by the convicts which were not marked "convict made goods," as required by statute. This court there discussed what is now section 4 of Title 23 O. S. 1941:

"Detriment is a loss or harm suffered in person or property."

And section 1 of the same title:

"As a general rule, compensation is the relief or remedy provided by the law of this State for the violation of private rights, and the means of securing their observance; and specific and preventive relief may be given in no other cases than those specified herein."

In the body of that opinion it was said:

"Under the foregoing section relief may be had from a detriment either through compensation, as defined in the first clause of said section, or by specific and preventive relief, as authorized in the latter clause of said section. Under the petition plaintiff does not seek relief through compensation, but seeks specific and preventive relief from a continuation of the detriment it has sustained and is sustaining.

"Under section 405, Comp. St. 1921, whenever it appears by the petition that plaintiff is entitled to the relief demanded, and such relief consists of restraining the commission or continuance of some act which would produce injury to the plaintiff, an injunction may be granted. Besides this, the district courts of the state and this court are vested with general equity powers. Therefore if, under the facts stated, plaintiff is entitled to preventive relief, either in equity or under the law, a preventive order should thereupon issue to the defendants."

And also:

"Although the state itself cannot be enjoined, yet when state officials are acting in an unconstitutional or otherwise illegal manner to the pecuniary detriment of private citizens, they are not regarded as acting for the state, and may be enjoined. And, where the intervention of equity by injunction is warranted by the necessity of protection to civil rights or property interests, the mere fact that a crime or statutory offense must be enjoined, as incidental thereto, will not operate to deprive the court of its jurisdiction."

In the instant case, plaintiff was ill-fitted to secure employment in many fields. She was doing hard work for a rather meager salary and in order to secure such employment it was necessary for her to agree to work 12 hours a day. I do not see the logic in the reasoning that "the hours of service were required by a contract that was voluntarily entered into by plaintiff." I do not believe that officers of the state should be allowed to violate statutory provisions, which were enacted for the protection of public health and the distribution of employment, on the grounds that the employee agreed to such violation in order to secure employment. Under the holding of the majority opinion, plaintiff is practically shut off from relief. To file a criminal action would be of little benefit to her personally; under the rule in the cases heretofore cited, if adopted by this court, she could not recover compensation for overtime employment; and it seems impractical to say she cannot maintain the present action unless it is brought in the name of the state on relation of the county attorney, or on relation of the Attorney General who here represents the defendants.

It is my opinion that plaintiff is clearly entitled to relief under the rule quoted in the majority opinion from 28 Am. Jr. 356, §166, as follows:

"There is no doubt but that equity will exercise jurisdiction to restrain acts or threatened acts of public corporations or of public officers, boards, or commissions which are ultra vires and beyond the scope of their authority, outside their jurisdiction, unlawful or without authority, or which constitute a violation of their official duty, whenever the execution of such acts

would cause irreparable injury to, or destroy rights and privileges of, the complainant, which are cognizable in equity, and for the protection of which he would have no adequate remedy at law."

For these reasons, I, therefore, dissent.

I am authorized to state that Mr. Justice HALLEY and Mr. Justice O'NEAL concur in the foregoing views.

