2001 OK CIV APP 153

**TULSA ORDER OF POLICE LODGE NO. 93, on behalf of Officers Dan TEDRICK, Kevin Staats, and Corporal Dan Fuller, Plaintiffs/Appellees,**

v.

**CITY OF TULSA, Oklahoma, a municipal corporation, and Mayor Susan Savage, Defendants/Appellants.**

No. 95,044.

Court of Civil Appeals of Oklahoma, Division No. 2.

June 12, 2001.

Rehearing Denied Sept. 4, 2001.

Certiorari Denied Nov. 20, 2001.

Thomas D. Robertson, S.M. Fallis, Jr., John E. Harper, Jr., Nichols, Wolfe, Stamper, Nally, Fallis & Robertson, Inc., Tulsa, OK, for Appellants.

Loren Gibson, McCaffrey & Tawwater, Oklahoma City, OK, for Appellees.

COLBERT, Judge.

¶ 1 Appellants, the City of Tulsa (City) and Mayor Susan Savage, appeal an order of the trial court enjoining the Mayor from conducting pre-termination hearings for Officers Dan Tedrick and Kevin Staats and Corporal Dan Fuller.[1] The two issues to be determined on appeal are whether the district court erred in (1) asserting jurisdiction in the matter and (2) granting the injunction. Based upon our review of the record and the applicable law, we find no error and affirm.

## BACKGROUND

¶ 2 This case arises out of the arrest of an individual by Officers Tedrick and Staats on February 19, 2000. The arrest occurred outside Tulsa City limits, and Tedrick, Staats, and Corporal Fuller were disciplined for falsifying the police reports concerning the arrest. Additionally, Tedrick and Staats were disciplined for making an unlawful arrest and using excessive force.

¶ 3 In April 2000, Tulsa Police Chief Ronald Palmer informed the Mayor of an internal affairs investigation involving the officers. At that time, however, Chief Palmer did not

---

1. For the sake of convenience, we will refer to the City and the Mayor as "City," unless it is necessary to specify the appellants.

know which type of discipline would be imposed upon them. On May 1, 2000, the Chief notified the three officers that, beginning May 7, 2000, they would be placed on a forty-five day suspension without pay. This punishment was imposed after the officers had been given the opportunity to participate in a pre-action hearing, which they refused.[2]

¶ 4 Chief Palmer presented the Mayor with a copy of the disciplinary decision, and the Mayor instructed him to contact U.S. Attorney Stephen Lewis and Tulsa County District Attorney Tim Harris concerning the effect the imposed discipline would have on the officers' credibility in future prosecutions. The Mayor contacted Tulsa City Attorney Martha Rupp Carter and solicited her opinion on the same issue.

¶ 5 Stephen Lewis responded to the Mayor's inquiry on June 1, 2000. He advised:

It goes without saying that the material is highly damaging to the officers' credibility. I would say any defense attorney willing to properly prepare and make the effort could conduct a cross examination using this material which would severely damage, if not destroy, the officers' credibility. This is true because of the nature of the misconduct involved, which goes directly to the officers' honesty in the line of duty in an actual case.

Martha Rupp Carter had previously written the Mayor on May 11, 2000. She stated that she had talked with Stephen Lewis, and that he had explained that he already had problems with the credibility of one of the officers. Carter expressed the same concerns relayed by Lewis, and added that participation by the officers in future prosecutions would "call into question law enforcement credibility in general," and, that if the officers' testimony was used in future prosecutions, it would need to be corroborated. Tim Harris had previously responded on May 9, 2000, expressing the same concerns shared by Lewis and Carter.[3]

¶ 6 On June 16, 2000, before the officers' suspensions had been fully served, the Mayor sent them notice that, based on the "new" information she had received from Lewis, Carter, and Harris concerning the officers' future credibility, she was planning to terminate them from their employment with the City. She further informed them that she would conduct pre-termination hearings on June 21, 2000.

¶ 7 The Tulsa Fraternal Order of Police (FOP), Lodge No. 93, filed a motion for a temporary restraining order and temporary injunction. The FOP argued that terminating the officers would constitute double jeopardy, as they had already been disciplined by Chief Palmer, and that the Mayor had no authority to conduct pre-termination hearings or to fire the officers. The FOP further argued that the Mayor's attempt to terminate the officers violated the Oklahoma Constitution, Tulsa City Charter, Tulsa City Ordinances, City of Tulsa Personnel Policies, and the collective bargaining agreement between the City and the FOP. The FOP placed particular reliance upon Article X, section 8.2 of the Tulsa City Charter, which provides in relevant part:

Persons in the classified service who are suspended without pay, removed, or demoted shall be notified in writing of the specific cause thereof within five (5) days following such action. A copy of such statement of cause shall be filed with the Personnel Director. Within ten (10) days from the receipt of such notice, the person affected may file a written request with the Personnel Director for a hearing before the Civil Service Commission. If such person shall fail to request a hearing before the Civil Service Commission as provided herein, the suspension without pay, removal, or demotion shall be final.

The FOP argued that, because the officers did not request a hearing within the ten-day period provided by section 8.2, their suspen-

---

2. As explained by Chief Palmer, a pre-action hearing is distinct from a pre-termination hearing. A pre-action hearing is generally conducted when a punishment other than termination is to be imposed. A pre-termination hearing is conducted when termination is being considered.

3. Harris's letter is the only one not contained in the record. The trial court's order, however, reflects that he wrote a letter to the Mayor on May 9, 2000, concurring with the opinions of Lewis and Carter.

sion became final and the Mayor could not impose further punishment.

¶ 8 The City filed a motion to dismiss for lack of subject matter jurisdiction. It argued that, because there was a collective bargaining agreement between the City and the FOP, the FOP was required to proceed through the administrative channels, and it failed to exhaust its administrative remedies before proceeding in district court.[4] The City further argued that arbitration, rather than injunctive relief, was the appropriate forum.

¶ 9 The district court issued a temporary restraining order on June 20, 2000, which was to remain in force and effect until a hearing could be conducted regarding a temporary injunction. A hearing on the injunction was conducted on June 27, 2000. The court determined that it could assert jurisdiction over the matter, explaining:

> [T]he issue of the mayor's authority to act in the first instance is before the court and a requirement of exhaustion of administrative remedies, through arbitration, would not afford the plaintiffs the relief they request: a finding that the mayor's actions are without authority and thus not a matter for arbitration. It is for this reason that the court assumes jurisdiction of the parties and the subject matter and overrules the City's Motion to Dismiss.

¶ 10 The court also explained that the Mayor had taken no action to terminate the officers during the ten-day period set out in section 8.2 of the Tulsa City Charter. Additionally, the parties had stipulated that the Mayor could seek termination only if new facts had been uncovered after the ten-day period had expired. The new facts which the City and the Mayor alleged were the opinions expressed by the U.S. Attorney, Tulsa County District Attorney, and Tulsa City Attorney regarding the officers' credibility in future prosecutions.

¶ 11 However, the court determined that these facts were not new at all. The letter from Tulsa City Attorney Martha Rupp Carter, dated May 11, 2000 (which was within the ten-day period during which a hearing could have been sought) referred to a discussion between Carter and Chief Palmer on May 8, in which Carter explained that she had discussed the matter with U.S. Attorney Stephen Lewis, who shared her opinion that the officers' credibility had been severely damaged. Moreover, the letter from District Attorney Tim Harris, dated May 9, also fell within the ten-day period.[5] The court concluded that, because the facts relied upon by the City and the Mayor were not new, the Mayor was without authority to convene the pre-termination hearings, and, therefore, an injunction was appropriate. The City appeals.

## DISCUSSION

### I.

**A. The Trial Court's Assumption of Jurisdiction was Proper**

¶ 12 The question of subject matter jurisdiction presents a question of law. Issues of law are reviewed de novo, and an appellate court has plenary, non-deferential authority to re-examine the trial court's legal rulings. *Neil Acquisition v. Wingrod Inv. Corp.*, 1996 OK 125, ¶ 5 n. 1, 932 P.2d 1100, 1103 n. 1.

¶ 13 The City argues on appeal, as it did below, that the district court lacked jurisdiction to hear the case and issue an injunction because arbitration was the only appropriate forum, and the FOP had a duty to exhaust administrative remedies before proceeding to district court. The City cites provisions of the Tulsa City Charter and Tulsa Revised Ordinances, which grant the Mayor the right to appoint, supervise, and remove City employees.[6]

---

4. The collective bargaining agreement provides for arbitration of disputes concerning the interpretation and application of the terms of the agreement.

5. The letter from U.S. Attorney Stephen Lewis was received after the ten-day time limit. However, because he expressed his concerns to Car-

ter, who relayed them in her letter of May 11, it cannot be said that Lewis's letter contained "new" information.

6. Article III, section 1.4(F) of the Tulsa City Charter provides that the Mayor shall "[a]ppoint, supervise, and remove all officers and employees of the City .... subject to the provisions of

¶ 14 The City also cites various provisions of the Fire and Police Arbitration Act, 11 O.S.1991 and Supp.2000 §§ 51–101 through 51–113, as well as case law, in support of its argument that arbitration was required. The provision of the Fire and Police Arbitration Act upon which the City specifically relies is section 51–111, which reads in relevant part:

Any agreement actually negotiated between the bargaining agent and the corporate authorities either before or within thirty (30) days after arbitration shall constitute the collective bargaining contract governing fire fighters or police officers in the municipality for the period stated therein; provided that such period shall not exceed one (1) year. Any collective bargaining agreement negotiated under the terms and provisions of this article shall specifically provide that the fire fighters or police officers who are subject to its terms shall have no right to engage in any work stoppage, slowdown or strike, the consideration for such provision being the right to a resolution of disputed questions. All rules, regulations, fiscal procedures, working conditions, departmental practices and manner of conducting the operation and administration of fire departments and police departments currently in effect on the effective date of any negotiated agreement shall be deemed a part of said agreement unless and except as modified or changed by the specific terms of such agreement. Every such agreement shall contain a clause establishing arbitration procedures for the immediate and speedy resolution and determination of any dispute which may arise involving the interpretation or application of any of the provisions of such agreement or the actions of any of the parties thereunder.[7]

The cases upon which the City relies include *Voss v. City of Oklahoma City*, 1980 OK 148, 618 P.2d 925; *Marley v. Cannon*, 1980 OK 147, 618 P.2d 401; *Martin v. Harrah Indep. School District*, 1975 OK 154, 543 P.2d 1370; and the *Steelworkers Trilogy*.[8]

¶ 15 In *Voss*, the City of Oklahoma City terminated the plaintiff from his employment as a firefighter. The plaintiff sought and received a hearing before the review board. When the termination was upheld by the City Manager, whose decision was final, the plaintiff filed suit in district court for breach of his employment contract. The jury rendered a verdict in favor of the plaintiff, and the City filed a motion for judgment notwithstanding the verdict, arguing that the district court lacked jurisdiction because the collective bargaining agreement contained grievance procedures which constituted the plaintiff's exclusive remedy. The motion was sustained by the lower court.

¶ 16 The City cites *Voss* for the supreme court's explanation that "[t]he fundamental purpose of arbitration is to preclude court intervention into the merits of disputes when arbitration has been provided for contractually." *Voss*, 1980 OK 148, ¶ 5, 618 P.2d at 927. The *Voss* court also explained that "[c]ourts generally favor arbitration statutes and collective bargaining agreements because they provide substantial justice by an immediate and speedy resolution with a minimum of court interference." *Id.* at ¶ 6, 618 P.2d at 928. The court agreed with the City of Oklahoma City, holding that the grievance

Articles X and XI of this amended Charter." Article X, discussed above, provides that an officer may request a hearing before the Civil Service Commission within 10 days of receiving notice of punishment. Article X is silent as to whether the Mayor may impose punishment. Title 29 section 101 of the Tulsa Revised Ordinances provides that the Tulsa Police Department "shall be under the control and authority of the Mayor." Neither of the provisions cited by the Mayor grants her a specific right to conduct a pre-termination hearing or to terminate the officers once discipline has already been imposed.

7. The district court concluded that this case does not involve the interpretation or application of the collective bargaining agreement between the City and the FOP; we are in agreement with that conclusion.

8. The *Steelworkers Trilogy* is comprised of *United Steelworkers of America v. American Mfg.*, 363 U.S. 564, 80 S.Ct. 1343 (1960); *United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347 (1960); and *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358 (1960). In these cases, the Supreme Court expressed a policy favoring arbitration.

procedure specified in the collective bargaining agreement should be regarded as the plaintiff's exclusive remedy. *Id.* at ¶ 9, 618 P.2d at 929.

¶ 17 The City cites *Martin* and *Marley* for their discussion of the exhaustion requirement. In *Martin*, the court stated exhaustion of administrative remedies is a jurisdictional prerequisite to judicial review, and that the exhaustion requirement "is a well settled rule of judicial administration to aid in the orderly administration of justice and to prevent transfer to the courts of duties imposed by law on administrative agencies." *Martin*, 1975 OK 154, ¶ 8, 543 P.2d at 1372 (citations omitted). Similar language is found in *Marley*.

¶ 18 Despite the general rules pronounced in these cases, we find the City's argument unpersuasive for two reasons. First, in *Voss*, the supreme court explained that, although arbitration is generally favored, courts do have the authority to determine "whether the party is making a claim which is governed by the contract when the parties have agreed to submit all questions of contract interpretation to an arbitrator." *Voss*, 1980 OK 148, ¶ 6, 618 P.2d at 928. In other words, courts may determine whether a particular dispute is arbitrable. See also *City of Muskogee v. Martin*, 1990 OK 70, ¶ 8, 796 P.2d 337, 340 (It is "within the authority of the courts to determine if a dispute is arbitrable under a collective bargaining agreement.").

¶ 19 Next, the court in *Marley* explained that there are exceptions to the exhaustion requirement. The court also stated that a court may enjoin the acts of a public officer where "the officer is acting without authority of law." *Marley*, 1980 OK 147, ¶ 8, 618 P.2d 401, 404. See also *Stephens v. Borgman*, 1949 OK 166, ¶ 10, 210 P.2d 176, 178, (quoting 28 Am. Jur 356 § 166):

There is no doubt but that equity will exercise jurisdiction to restrain acts or threatened acts of public corporations or of public officers, boards, or commissions which are ultra vires and beyond the scope of their authority, outside their jurisdiction, unlawful or without authority, or which constitute a violation of their official duty, whenever the execution of such acts would cause irreparable injury to, or destroy rights and privileges of, the complainant, which are cognizable in equity, and for the protection of which he would have no adequate remedy at law.

¶ 20 Based upon the aforementioned authorities, we conclude that the district court in the case at bar had the authority to determine whether the dispute concerning the pre-termination hearings was arbitrable, and it had the authority to enjoin the Mayor from conducting the hearings if it determined that she did not have the authority to do so.

¶ 21 The district court stated in its order that the Mayor stipulated to the fact that she could conduct the hearings *only* if she had received new information concerning the officers. The City's argument on appeal seems to ignore this stipulation. However, the supreme court has cautioned that stipulations are solemn admissions and are binding upon the parties and the court. See *Bonner v. Oklahoma Rock Corp.*, 1993 OK 131, ¶ 5 n. 15, 863 P.2d 1176, 1181 n. 15.

¶ 22 The new information the Mayor supposedly received consisted of the opinions from the U.S. Attorney, Tulsa City Attorney, and Tulsa County District Attorney concerning the officers' credibility in future cases. We are in agreement with the district court that the Mayor became aware of the opinions of these attorneys within the ten-day time period provided by section 8.2 of the City Charter.[9] Thus, the information was not new, and the Mayor had no authority to conduct the hearings.[10] We, therefore, find

9. Moreover, Chief Palmer testified that the credibility issue is explored in many cases involving officers' discipline; it was not new to this case.

10. The Mayor's actions raise a concern in that Chief Palmer testified that the Mayor had delegated to him the authority to discipline police officers, and that, since he became Chief of Police in 1992, the Mayor, to his knowledge, had never initiated an officer's termination. Robert Jackson, President of the Tulsa Fraternal Order of Police, Lodge No. 93, also attested that, to his knowledge, no mayor had conducted either a pre-action or pre-termination hearing involving a City of Tulsa police officer. Additionally, section 406.2 of the City of Tulsa Personnel Policy pro-

that the district court was correct in assuming jurisdiction of the matter.[11]

### B. The Trial Court Did Not Abuse Its Discretion in Granting Injunctive Relief

¶ 23 "Granting or denying injunctive relief is generally within the sound discretion of the trial court and a judgment issuing or refusing to issue an injunction will not be disturbed on appeal unless the lower court has abused its discretion or the decision is clearly against the weight of the evidence." *Sharp v. 251st St. Landfill, Inc.*, 1996 OK 109, ¶ 4, 925 P.2d 546, 549 (citing *Johnson v. Ward*, 1975 OK 129, 541 P.2d 182 ). In reviewing the trial court's decision, we are not bound by the court's findings or reasonings; rather, "we must consider, examine and weigh all the evidence." *Id.*

¶ 24 The Oklahoma statute providing for the issuance of a temporary injunction is 12 O.S.1991 § 1382, which reads in relevant part:

> When it appears, by the petition, that the plaintiff is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission or continuance of some act, the commission or continuance of which, during the litigation, would produce injury to the plaintiff ... a temporary injunction may be granted to restrain such act.

There are four criteria courts consider to determine whether to grant a temporary injunction: "(1) the applicant's likelihood of success on the merits, (2) irreparable harm to the party seeking relief if injunctive relief is denied, (3) relative effect on the other interested parties, and (4) public policy concerns arising out of the issuance of injunctive relief." *Thayne A. Hedges Regional Speech & Hearing Ctr., Inc., v. Baughman*, 1998 OK CIV APP 122, ¶ 4, 996 P.2d 939, 941 (quoting *Dorchester Hugoton, Ltd. v. Dorchester Master Ltd. Partnership*, 1996 OK CIV APP 60, ¶ 5, 925 P.2d 1222, 1225). The City argues that none of the requisite criteria were met. We disagree.

¶ 25 Although all four criteria must be met before an injunction is issued, courts tend to focus most heavily upon the "irreparable harm" requirement. One way in which courts assess irreparable harm is by determining whether a plaintiff has an adequate remedy at law. See *First Am. Bank & Trust Co. v. Sawyer*, 1993 OK CIV APP 115, ¶¶ 19–20, 865 P.2d 347, 351.

¶ 26 The City devotes most of its argument to the irreparable harm element. The City first argues that the FOP has an adequate remedy at law through arbitration, which the FOP agreed upon in the collective bargaining agreement. As we have previously discussed, the Mayor lacked authority to convene the pre-termination hearings, and, therefore, arbitration is not an adequate remedy.

¶ 27 Next, the City argues that any harm to the officers is merely speculative, and loss of employment does not constitute irreparable injury. This latter argument is a due process argument based upon the United States Constitution and *Wood v. Independent Sch. Dist. No. 141 of Pottawatomie County*, 1983 OK 30, 661 P.2d 892. In *Wood*, the Oklahoma supreme court held only that non-tenured teachers are not entitled to the full range of due process protections to which tenured teachers are entitled. *Id.* at ¶ 17, 661 P.2d at 896. Wood does not involve the issuance of injunctive relief, and the case is inapposite to the facts confronting us here.[12]

---

vides that classified, non-probationary employees being considered for termination must have a pre-termination hearing (unless waived by the employee) conducted *by the department head.*

11. Moreover, were we to conclude that the district court lacked jurisdiction, we would not necessarily agree with the Mayor that arbitration is the FOP's only remedy. Both the City Charter and the collective bargaining agreement allow matters concerning dismissal to be submitted to the Civil Service Commission.

12. We do, however, agree that temporary loss of employment does not generally constitute sufficient basis upon which to issue an injunction. Indeed, the United States Supreme Court addressed the matter in *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937 (1974). There, a probationary government employee who learned of her impending dismissal sought a temporary injunction pending an administrative appeal. The Court explained, "the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury." *Id.* at 90, 94 S.Ct. at 952–53. However, the Court also explained that

¶ 28 The City's argument is based upon the premise that, in order to suffer irreparable harm, one must suffer a violation of a due process right pertaining to "the individual's freedom of choice with respect to certain basic matters of procreation, marriage and family life." Oklahoma law does not define irreparable harm in this manner. Oklahoma law provides that, "[i]njury is irreparable when it is incapable of being fully compensated by money damages, or where the measure of damages is so speculative that arriving at an amount of damages would be difficult or impossible." *House of Sight & Sound, Inc., v. Faulkner*, 1995 OK CIV APP 112, ¶ 10, 912 P.2d 357, 361. In our view, the Mayor's convening of pre-termination hearings without official authority and compelling the officers to submit to arbitration would amount to irreparable harm.

¶ 29 In *Board of Educ. of Sussex County Vocational Technical Sch. Dist. v. Sussex Tech. Educ. Ass'n*, 1998 WL 157373 (Del.Ch. 1998), a case involving the arbitrability of a dispute, a Delaware court addressed the irreparable harm requirement. There, a school district received information that a teacher had engaged in sexual misconduct. After conducting an investigation, the district notified the teacher of its intent to terminate his employment. The teacher requested and received a hearing, and was later terminated. Subsequently, he sought to grieve his termination under the collective bargaining agreement covering teachers employed by the district. The district denied his request, and the teacher commenced an arbitration proceeding. The district sued to enjoin the proceeding.

¶ 30 The Delaware court first determined that the dispute was not arbitrable. *Id.* at *3, 1998 WL 157373. The court then determined that the requirements for injunctive relief were satisfied, explaining:

> Because the Court has determined that [the defendant's] termination is not arbitrable, the District has established that it will succeed on the merits of its claim.

The District has also shown that it would suffer irreparable harm if the injunction is denied, because it would be required to devote unnecessary time and resources to contest the arbitrability of the District's decision to terminate [the defendant], and because no remedy other than injunctive relief would be adequate to restore to the District its right to defend the propriety of its actions in the appellate forum mandated by the Legislature.

*Id.* at *5, 1998 WL 157373 (footnote omitted).

¶ 31 Although *Board of Education of Sussex County* involved a permanent injunction, rather than a temporary one, we find the court's reasoning persuasive. We have already determined that the dispute is not arbitrable because the Mayor lacked authority to convene pre-termination hearings. Thus, we find that the FOP has established both a likelihood of success on the merits and irreparable harm. As explained by the Delaware court, if the injunction was denied, the FOP would be required to expend unnecessary time and resources to further contest the arbitrability of the Mayor's authority to terminate the officers. Injunctive relief is the only adequate remedy.

¶ 32 The City further argues that public policy concerns dictate against the issuance of an injunction. The City argues that the legislature is charged with the responsibility of making the public policy for this state, and the legislature favors arbitration. It is true that arbitration is favored for disputes involving police officers and firefighters *when such disputes are arbitrable.* However, we believe the public policy of this state is best addressed by *Stephens v. Borgman*, 1949 OK 166, ¶ 10, 210 P.2d 176, 178, which stated that public officers will be restrained when attempting to act outside their sanctioned authority.

¶ 33 The remaining criteria to be considered is the relative effect on other interested parties. We find no interests of the City

"cases may arise in which the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found. Such extraordinary cases are hard to define in advance of their occurrence." *Id.* at 92 n. 68, 94 S.Ct. at 954 n. 68. We do not rely upon loss of income as a basis to uphold the injunction.

which outweigh those favoring the issuance of an injunction. For these reasons, we hold that the trial court did not abuse its discretion in issuing the injunction, and its judgment is not clearly against the weight of the evidence.

## II.

¶ 34 Finally, the City argues in its petition in error that the court's order is so vague that it cannot be enforced. However, the City omits this argument from its brief. Therefore, the issue is waived. *See* Okla. Sup.Ct.R. 1.11(k)(1) ("Issues raised in the Petition in Error but omitted from the brief may be deemed waived.").[13]

## CONCLUSION

¶ 35 We find that the district court did not err in asserting jurisdiction in this case as the Mayor did not have authority to convene pre-termination hearings. We further find that, because the requirements for injunctive relief were met, the court did not abuse its discretion in issuing the injunction and its judgment was not clearly against the weight of the evidence.

¶ 36 AFFIRMED.

¶ 37 REIF, V.C.J., and GOODMAN, P.J., concur.

---

13. Were we to consider this argument, we would find it unpersuasive. The supreme court has explained that an order granting injunctive relief must only "define specifically what the enjoined person must or must not do, in language so clear and explicit that a layman can understand what he is expected to do, or refrain from doing, without placing the one enjoined in the position of acting at his peril." *See Amoco Prod. Co. v. Lindley,* 1980 OK 6, ¶ 56, 609 P.2d 733, 746–47 (quoting *Xerox Corp. v. Neises,* 31 A.D.2d 195, 295 N.Y.S.2d 717 (1968)). The language used by the district court is clear enough that a layperson could understand what the Mayor must refrain from doing.