Harold C. STUART and Joan S. Stuart,
Plaintiffs in Error,

v.

C. W. TITUS, Trustee for C. W. Titus Company, a Common-Law Trust,
Defendant in Error.

No. 40835.

Supreme Court of Oklahoma.

Feb. 23, 1965.

Rehearing Denied March 23, 1965.

Doerner, Stuart, Moreland & Saunders, Harold C. Stuart, Harry D. Moreland, Tulsa, for plaintiffs in error.

Fenelon Boesche, Richard B. McDermott, T. Hillas Eskridge, Franklin D. Hettinger, by Franklin D. Hettinger, Tulsa, for defendant in error.

DAVISON, Justice.

This is an appeal by Harold C. Stuart and Joan S. Stuart (defendants below) from a judgment granting a mandatory injunction against them and in favor of C. W. Titus, Trustee for C. W. Titus Company, a Common-Law Trust (plaintiff below). The judgment ordered the defendants to remove a "dog kennel together with the seventy (70) by thirty (30) feet dog run or wire enclosure from its present location

which" violated dedication restrictions imposed on Lot 6 in the Re-subdivision of Block 10, Forest Hills Addition to the City of Tulsa, and enjoined them from constructing or maintaining a dog run or dog kennel at any location on Lot 6 that violated the restrictions.

Plaintiff's petition alleged, inter alia, that he made and filed the Re-subdivision of Block 10 and imposed certain restrictions upon grantees of the lots therein; that defendants acquired Lots 5 and 6 and had violated the restrictions fixing a 50 foot rear lot building line and acceptable fencing, by constructing a garage and "two (2) dog kennels together with a seventy (70) feet by thirty (30) feet dog run or wire enclosure," within the rear 50 feet of Lot 6; that the violations resulted in irreparable injury to plaintiff's property, without adequate remedy at law; and prayed the defendants be enjoined from permitting the structures to continue in that location (mandatory injunction) and from violating the restrictions. Defendants' answer denied violation of the restrictions and alleged the "structures" were erected and were being maintained pursuant to consent by the Building Committee provided in the restrictions.

After trial to the court the plaintiff was denied any relief as to the garage (carport), but ordered the defendants to remove the other structures, supra. Plaintiff perfected no appeal to this court. It appears that the trial court's decision as to the carport was based to a large extent on the great expense involved in removing the portion that encroached beyond the rear building line.

The record reflects the following evidence. In July, 1956, the plaintiff, as owner, filed the Re-subdivision of Block 10, platting residence building site lots along the east, south and west sides of Block 10, whereby a center lot was bounded by such lots on those sides. These lots face outward on the adjoining streets and their rear boundaries constitute the boundary of the center lot on the stated sides. Mr.

Titus occupies a residence located on this center lot with access to the street on the north. In connection with the re-subdivision the plaintiff filed restrictions concerning residential construction and the use and occupancy of the property. These restrictions and the relatively large size of the lots combined to create a high-class residential subdivision for single-family dwellings. It appears that the defendants and Mr. Titus and his wife were at the least close acquaintances, and that Mr. Stuart participated in securing city approval of the Re-subdivision because he intended to buy a building site therein and construct his family home thereon. The defendants acquired Lot 5 in 1956 and the adjoining Lot 6 in 1958. Only Lot 6 is involved in the controversy and we are concerned only with the "dog run" or "dog kennels" and the enclosure thereof.

The recorded plat shows that Lot 6 has a 50 foot rear lot building line. The restrictions are dated July 6, 1956, and are limited to a term of 10 years. They provide in part as follows:

"1. No business building, apartment, or any edifice shall be erected except as hereinafter permitted:

*　*　*　*　*　*

"6. All building and improvements shall be located and maintained in compliance with the front and rear building lines shown on the recorded plat of this re-subdivision. * * *

*　*　*　*　*　*

"8. Unless otherwise approved in writing by the Building Committee named below, only ornamental iron, ornamental stone, ornamental brick, or ornamental concrete block fences may be erected, and shall not exceed five feet, three inches (5′ 3″) in height above ground level.

*　*　*　*　*　*

"11. For a period of ten (10) years from this date, no building or improvements, or any object, shall be erected on any lot of this re-subdivision until the plans and specifications therefor,

the identity of the architect, and of the general contractor, shall have been submitted to and approved by the aforesaid building Committee, composed presently of C. W. Titus, Harold C. Stuart, and Kenneth Crouch. Upon the death or refusal to act of any one of that Committee, the other two members shall fill that vacancy from one of the owners of a lot in Block 10. Action by a majority of the committee shall be sufficient."

In the early part of 1962 the defendants began development of Lot 6, in accordance with drawn plans including swimming pool, bath houses, and the carport and dog run. Stuart discussed these plans with Mr. Crouch (member of the Committee) on the site and testified Crouch gave his oral approval. When the court sustained an objection to Crouch likewise testifying in this regard, the defendants made an offer of proof that Crouch would testify the plans did not violate the restrictions and could be approved. Titus was in Florida. Stuart testified he telephoned Titus regarding the planned development, twice in March and once in April, and told him of the planned construction of the pool, bath houses, carport and dog pen, and that Titus approved. Stuart further testified that in the conversation he asked for a return of a quantity of ornamental iron fencing to enclose the dog pen and the yard and the request was refused. It appears that this ornamental fencing had originally enclosed all of Block 10, and the dispute between the parties as to defendants' right to a part thereof is a matter outside of the present controversy. Titus testified the telephone conversations were only concerning the return of the fencing and not about the other matters.

On June 22, 1962, when Titus returned from Florida, the carport and dog pen had been completed. The more definite evidence reflects that the side of the carport extends about 13 feet back of the 50 foot rear building line. The dog pen occupies the intervening area to the rear lot line (about 37 feet) and is about 74 feet long, and is enclosed by chain link fencing except where it borders on the carport and the rear line (about 74 feet) adjacent to plaintiff's property. This common line is fenced with ornamental iron fencing. In the enclosure are two small portable wooden dog houses, capable of being moved about the enclosed area, and appearing from plaintiff's photographic exhibits 7 and 9 to be about 4½ feet by 3 feet, and 3 feet high.

Plaintiff made oral objection to the alleged violations of the restrictions in September, 1962, and by letter of October 4, 1962, made demand for removal of the encroaching carport and dog pen. This action was filed November 5, 1962. Judgment was rendered October 17, 1963.

In view of our disposition of this matter we have endeavored to present a clear statement of the circumstances from which this litigation arose.

There is no evidence that the plaintiff was disturbed by noise from the dogs or that the pen was unsightly. From the record and briefs it appears that the pen was used to keep a watch dog and a second dog was later kept therein. It was not used for the purpose of breeding and raising dogs and the question of the right to keep a dog is not raised. It does not appear that the Building Committee named in the restrictions acted or functioned as a group while the lots in the Re-subdivision were being built on.

The plaintiff based his request for a mandatory injunction for removal of the dog houses and chain link fence entirely upon the provisions of the restrictions and argues in support of the judgment that the physical things constituting the dog pen, severally and collectively, are "buildings" or "improvements" when related to the 50 foot rear building line. Defendants argue to the contrary. Considering the numerous and varied uses that present-day home owners make of their fenced backyards, in satisfying their interests and activities, there is some merit to each of their respective contentions. There is also present some elements of compliance and waiver of

the restrictions. Under the present circumstances we decline to pass upon these contentions when the lapse of a relatively short time will determine the life of the restrictions.

■ Granting that the chain link fence may be violative of the restriction as to the type of fence that may be erected, or that it may violate the rear building line, still there are certain prerequisites to the allowance of a mandatory injunction. Obviously all of them are not present in this case.

■ In Peck v. State ex rel. Department of Highways, Okl., 350 P.2d 948, we said that the facts which will warrant granting relief by mandatory injunction must be clear, free from all reasonable doubt, and disclose irreparable injury to the complainant. Citing 28 Am.Jur., Injunctions, Sec. 21. Therein we stated:

"A mandatory injunction is an extraordinary remedial process resorted to usually for the purpose of effectuating full and complete justice, and commands the performance of some positive act. However, even if the right is clear, it does not follow that a mandatory injunction, without stating an appropriate alternative, must be granted, and such an injunction will be issued only in case of extreme necessity, where the right invaded is material and substantial, and where other adequate redress is not afforded. * *"

■ In the cited case we quoted with approval as follows:

" 'The extraordinary remedy of permanent mandatory injunction compelling the alteration, destruction, or removal of property should be granted with great caution and should not be granted unless serious injury is being inflicted or, in all probability, will be inflicted.' "

The facts are not clear and free from all reasonable doubt and do not show serious irreparable injury. It is our conclusion that the trial court erred in granting the mandatory injunction. The judgment appealed from is reversed.

Reversed.

JACKSON, V. C. J., and JOHNSON, BLACKBIRD, IRWIN, and BERRY, JJ., concur.

WILLIAMS, J. dissents.

Rehearing denied, WILLIAMS, J., dissenting.