STATE of Oklahoma ex rel. Bruce W. DAY, Administrator of the Department of Securities and for the Oklahoma Securities Commission, Respondent,

v.

SOUTHWEST MINERAL ENERGY, INC., an Oklahoma Corporation; Harvey Estes, Suzan Estes and Jim Bryant, Petitioners.

No. 54725.

Supreme Court of Oklahoma.

July 23, 1980.

Rehearing Denied Oct. 20, 1980.

James Barwick, Associate Gen. Counsel, Oklahoma Dept. of Securities, and Joseph C. Long, Norman, for respondent.

Richard D. Hampton and James C. Hanna, Oklahoma City, for petitioners.

BARNES, Justice:

This case is before us by virtue of our granting a Petition for Certiorari to review an Interlocutory Order of Judge David M. Cook of the District Court of Oklahoma County, issued in State of Oklahoma, ex rel. Bruce W. Day, Administrator of the Department of Securities and for the Oklahoma Securities Commission, v. Southwest Mineral Energy, Inc., an Oklahoma Corporation, Harvey Estes, Suzan Estes and Jim Bryant (District Court No. CD–77–1484). The case giving rise to the Interlocutory order was an action by the Administrator of the Oklahoma Department of Securities, charging the Defendants (Petitioners in this Court), both individual and corporate, with violating the registration and anti–fraud provisions of the Oklahoma Securities Act, 71 O.S.1971, §§ 101, 201, and 301.

The petition alleged that the Defendants were offering for sale and selling interests in oil and gas wells which constituted securities, without properly registering them. It further alleged that the Defendants made false statements in the written prospectus made available to the public and investors by grossly over–estimating drilling expenditures, and that Defendants transferred funds to the corporate defendant in a manner inconsistent with the facts set forth in the prospectus, and made such transfers possible by placing money, not contributed by investors, into an escrow account in order to achieve the escrow amount required for the release of all funds to the corporate defendant.

In his prayer for relief, the Administrator prayed for both temporary and permanent injunctions enjoining and restraining the Defendants (1) from making false and misleading statements, (2) from destroying, secreting, transferring, or otherwise disposing of corporation accounts and records, and (3) from transferring or removing any assets of the corporate defendant. Additionally, the administrator prayed for: "An order, in furtherance of the purpose of the Act, and to effectuate its remedial purpose, directing each defendant to pay over monies received as a result of the unlawful activities described herein to the Court for distribution to persons who have purchased such securities from defendants, such distribution to be in a manner ordered by this Court."

The relief sought in the above quoted prayer is commonly referred to as "disgorgement"–a mandatory order by the Court requiring those who obtain funds from investors or purchasers or lessees in violation of regulatory provisions, to "disgorge" themselves of the illegally obtained profits. In the case before us, the District Court issued a Memorandum Order and Opinion in which the Court addressed two issues:

(1) Whether under the Oklahoma Securities Act the Administrator of the Oklahoma Department of Securities is empowered to seek relief in the form of disgorgement; and

(2) Whether the District Court is empowered to grant such relief in an appropriate case.

In addressing those issues, the Trial Court made clear that it was *not* deciding whether disgorgement should be granted in the case before it. Rather, it was only deciding whether such relief could be sought by the Commission, and whether the Court had the power to grant such relief. After detailing the procedural history of the case, action taken by the courts administering similar federal statutes, and decisions made by sister jurisdictions, the Trial Court concluded that the Administrator did in fact have the power to seek such relief,

and the Court had power to grant such relief, in appropriate cases.

Because this question has not heretofore been addressed by this Court or any other State Appellate Court, and because a fellow Trial Judge reached the opposite conclusion in a similar case, the Trial Court, at the request of Southwest Mineral Energy and the individual defendants, certified its order, and Southwest Mineral Energy and the individual defendants petitioned this Court to review the Certified Interlocutory Order of the Trial Court. Petitioners' petition for certiorari having been previously granted, and the issue having been fully briefed, we now review the Trial Court's order.

### I.

We must first determine whether the Trial Court has the power to issue a mandatory injunction requiring violators of the Oklahoma Securities Act to "disgorge" themselves of illegally obtained profits.

As pointed out in the Trial Court's Memorandum Order, such relief has for quite some time been granted by Federal District Courts. In 1946, the Federal Price Administrator brought suit against the Warner Holding Company for violation of the Emergency Price Control Act of 1942. The Administrator sought to enjoin the Warner Company from further collecting rents in excess of established ceiling prices. Additionally, the Administrator sought a mandatory injunction requiring the company to disgorge all amounts previously collected in excess of the ceiling price. The District Court and the Court of Appeals both denied the mandatory relief. However, the United States Supreme Court held that such relief was available. *Porter v. Warner Holding Company,* 328 U.S. 395, 398, 66 S.Ct. 1086, 90 L.Ed. 1332, 1336–37 (1946). In making this ruling, the Supreme Court of the United States stated:

"Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction. And since the public interest is involved in a proceeding of this nature, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake.... Power is thereby resident in the District Court, in exercising this jurisdiction, 'to do equity and to mould each decree to the necessities of the particular case.'"

The court then went on to state:

"Moreover, the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." 328 U.S. 395, at 388, 66 S.Ct. 1086, at 1089, 90 L.Ed. 1332, at 1337.

On two more recent occasions, the United States Supreme Court has affirmed this position, in *United States v. Moore,* 340 U.S. 616, 71 S.Ct. 525, 95 L.Ed. 582 (1951) (dealing with the Housing and Rental Act of 1946), and in *Mitchell v. DeMario Jewelry, Inc.,* 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960) (dealing with the Fair Labor Standards Act of 1938). In the latter case, the Court stated:

"When Congress entrusts to an equity court the enforcement of prohibitions contained in regulatory enactment, *it must be taken to have acted cognizant of the historic power of equity to provide complete relief in light of the statutory purpose.* As this Court long ago recognized, *'there is inherent in the Courts of Equity a jurisdiction to ... give effect to the policy of the legislation.'"* [Emphasis added] 361 U.S. 288, at 291–2, 80 S.Ct. 332, at 355, 4 L.Ed.2d 323, at 326.

Based on these Supreme Court decisions, the Securities and Exchange Commission (SEC) began to seek disgorgement in actions to enforce the Federal Securities Act.[1]

---

1. See, 6 L. Loss Securities Regulation, 3872–3877 (1979 Supp.2d Ed.) for discussion of these earlier cases, most of which involved consent decrees.

The first opportunity to consider this practice came in the landmark case of *securities and Exchange Commission v. Texas Gulf Sulphur Company*, 446 F.2d 1301 (2d Cir. 1971).

In that case, the Second Circuit Court of Appeals rejected Gulf Sulphur's contention that the SEC lacked the authority to request disgorgement. In holding that the SEC in fact had such power, the Court commented upon the Trial Court's power to grant such relief, stating:

"... The appellants concede that the courts of appeals have upheld the equity power of the district courts to authorize as ancillary relief the appointment of receivers under the Securities Exchange Act of 1934 at the request of the SEC even though no specific statutory authority exists for such action....

"Moreover, in other contexts the Supreme Court has upheld the power of the Government without specific statutory authority to seek restitution [disgorgement], and has upheld the lower courts in granting restitution, [disgorgement] as an ancillary remedy in the exercise of the courts' general equity powers to afford complete relief. *Mitchell v. Robert De Mario Jewelry*, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960); *United States v. Moore*, 340 U.S. 616, 71 S.Ct. 524, 95 L.Ed. 582 (1951); *Porter v. Warner Holding Co.*, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed.2d [sic] 1332 (1946). There is little doubt that § 27 of the Act confers general equity power upon the district courts." 446 F.2d 1301, at 1307.

Title 15 U.S.C. § 78aa, the codification of "§ 27 of the Act" referred to above, provides in part:

"The District Court of the United States, the United States District Court for the District of Columbia, and the United States Court of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this title [15 U.S.C. §§ 78a et seq.] or the rules and regulations thereunder, *and of all suits in equity and actions at law brought to en-*

*force any liability or duty created by this title....*" *[Emphasis added]*

Unlike the Federal Securities Exchange Act of 1934 [codified as 15 U.S.C. § 78a through 78kk], the Oklahoma Securities Act [71 O.S. §§ 1 through 504] does not contain a provision similar to 15 U.S.C. § 78aa, which vests Federal District Courts with general equitable powers to enforce the Securities Exchange Act of 1934. To some extent, the Defendants below rely upon the absence of such a provision in the Oklahoma Act to support their position that Oklahoma District Courts are without the power to grant the equitable remedy of disgorgement. We do not find such an argument persuasive.

The only provisions of 15 U.S.C. § 78aa dealing with the equitable powers of the Federal District Courts provide that they "shall have exclusive jurisdiction of ... all suits in equity and actions at law brought to enforce any liability or duty created by this Title ...." While there is no counterpart to this provision in the Oklahoma Securities Act, such a provision is not necessary, as equity jurisdiction is conferred upon District Courts of this State by virtue of Article 7 § 7 of the Oklahoma Constitution, and 12 O.S.1971 § 10. Article 7 § 7 of the Oklahoma Constitution provides in part:

"The District Court shall have unlimited original jurisdiction of all justiciable matters, except as otherwise provided in this Article, ..."

Section 10 of Title 12 abolishes the distinction between suits in equity and at law in the following language:

"The distinction between actions at law and suits in equity, and the forms of all such actions and suits, heretofore existing, are abolished; and in their place there shall be, hereafter, but one form of action, which shall be called a civil action."

The combination of the above quoted statute and Article 7 § 7 of the Oklahoma Constitution, conferring unlimited original jurisdiction of all justiciable matters to the District Courts of this State, makes all District Courts in this State courts of equity

and law. Thus, a provision in this State's Securities Act, conferring equitable jurisdiction upon District Courts, is not needed, as all State District Courts have such jurisdictional power.

Additionally, we would point out that provisions of the Oklahoma Securities Act clearly demonstrate that the Legislature intended that equitable remedies be available in order to enforce the Act. 71 O.S.Supp. 1973, § 408(i), provides:

> "The rights and remedies provided for in this title *are in addition to other rights or remedies that may exist in law or in equity;* however, no additional cause of action is created unless specified in this section or Section 202(e) of this title." [Emphasis added]

For the above stated reasons, we hold that the District Courts of Oklahoma are empowered to do equity in actions brought under the Oklahoma Securities Act. Once the equity jurisdiction of the District Court has properly been invoked, the Court possesses the necessary power to fashion appropriate remedies. We hold this power includes the power to require "disgorgement" of unlawful profits in appropriate cases.

A reading of the Oklahoma Securities Act makes it clear that one of its purposes is to protect the uninformed from manipulative and deceptive practices when dealing in securities.[2] Given this purpose, we do not believe it was the intention of the Legislature to allow those guilty of manipulative practices to profit from their illegal action. Thus, we hold that when the facts show such relief is appropriate, District Courts in the State of Oklahoma may require those violating the Securities Act to disgorge themselves of their unlawful profits.

In so holding, we note that such relief can be granted through the issuance of a mandatory injunction, which this Court

on many occasions has held lies within the power of the District Courts of this jurisdiction. See, e.g., *Peck v. State*, 350 P.2d 948 (Okl.1960); *Stuart v. Titus*, 400 P.2d 797 (Okl.1965); and *Thompson v. North*, 191 Okl. 356, 129 P.2d 1011 (1942). This is not to say, however, that disgorgement can only take the form of a mandatory injunction. Rather, disgorgement, being an equitable remedy, may be tailored in each individual case, to reach the ends of justice and equity. Additionally, we would note that the remedy of disgorgement is an addition to any and all other remedies, both legal and equitable, available to both the Administrator and private investors. Accordingly, nothing in our holding today should be construed as limiting remedies already available to the Administrator or to individual investors. Our ruling today simply acknowledges that the remedy of disgorgement is recognized in this jurisdiction, and that the Judges of this State are empowered to employ this remedy.

## II.

Lastly, we will consider whether the Administrator of the Oklahoma Department of Securities has the power to seek mandatory as well as prohibitory injunctions, including orders of disgorgement. We hold that the Administrator has such power.

In *Securities and Exchange Commission v. Texas Gulf Sulphur Company, supra,* the Court stated:

> "... Appellants' contention is that the SEC is without the authority to request the exercise of these powers [power to fashion equitable remedies]. However, as stated in *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 391, 90 S.Ct. 616, 625, 25 L.Ed.2d 593 (1970): '[W]e cannot fairly infer from the Securities Exchange Act of 1934 a purpose to circumscribe the courts' power to grant appropriate remedies.' While *Mills* was dealing with relief to private litigants, we deem the above

---

**2.** See *Colonial Bank & Trust Co. v. American Bank Shares Corporation*, 442 F.Supp. 234 (D.C.Wis.1977), in which a Wisconsin Federal Court found that the purpose of the Wisconsin Securities Act, which like Oklahoma's is an enactment of the Uniform Securities Act, is to protect the uninformed from manipulative and deceptive practices.

statement to be fully applicable to enforcement actions by the SEC. Thus we hold that the SEC may seek other than [prohibitory] injunctive relief in order to effectuate the purposes of the Act, so long as such relief is remedial relief and is not a penalty assessment." 446 F.2d 1301, at 1308.

Like the Court in the above quoted case, we find nothing in the Securities Act before us which would limit the Administrator's right to seek equitable relief. In point of fact, Section 406 of Title 71 specifically authorizes the Administrator to seek injunctions and Writs of Mandamus. To say that other equitable remedies were not available to the Administrator in appropriate cases would be to thwart the very purpose of the Act, which is, as stated above, to protect the uninformed from manipulative and deceptive practices when dealing in securities. One of the most effective means to such an end is to deprive those guilty of such manipulative and deceptive practices of their illegal profits–thus discouraging such activity. An interpretation of the Federal Securities Exchange Act and other Federal regulatory acts, as discussed above, is consistent with our holding today.

The Defendants argue that the Trial Court erred in following what they call the "Federal rationale", and in so arguing urge us to follow the rationale of a few of our sister States, which have held that the Administrator may not seek disgorgement.

■ We refuse to follow the "rationale" of those few States because those cases cited offer but a weak contradiction to the long line of Federal cases allowing disgorgement. The cases relied upon by the Defendants do not adequately explain the reason behind their decisions, and on occasion have confused the Administrator's right to recover with that of the individual investor. In the case of *Wee Mac v. State*, 301 So.2d 101 (Fla.App.1974), the per curiam opinion merely reversed the case without any citation of authorities or discussion of the Trial Court's order. Additionally, the Act being interpreted–the Florida Securities Act, which, unlike Oklahoma's, is *not*

the Uniform Securities Act–is markedly different from the Act before us.

The Ohio case of *State v. Buckeye Fin. Corp.*, 54 Ohio St.2d 407, 377 N.E.2d 502 (1978), is also clearly distinguishable from the case before us. In *Buckeye*, the State sought an order from the Trial Court declaring that the defendants were liable to the injured investors. Thus, the Ohio Administrator in that case was attempting to act on behalf of individual investors. The Court's refusal to allow such relief is of little aid in addressing the issues before us today, because the Administrator in the case before us is not attempting to act on behalf of individual investors.

Similarly, in *State v. Dare To Be Great, Inc.*, 1971–78 Transfer Binder Blue Sky L. Rep. (CCH) ¶71–096 (Utah Dist. Ct.1972), *a district court, not an appellate court*, held that the Administrator was not entitled to the relief he sought. In that case, the Utah Administrator was seeking, *on behalf of the investors, to rescind all the investment contracts* sold by Glenn Turner, and was not asking that the Court permit disgorgement of profits.

For the reasons stated above, we are not persuaded by the authority cited by the Defendants.

In so holding, we would note that we are today interpreting the Administrator's powers as provided by the Oklahoma Securities Act, which is the Uniform Securities Act. The Official Comments in the Draftsmen's commentary to the Uniform Securities Act make it clear that the interpretative history of the Federal Act was intended to be carried over into the State Act when the draftsmen elected to pattern the Uniform Securities Act language after the language of the Federal statutes. The Draftsmen's Commentary specifically states:

"Section 408 [Section 406 of the Oklahoma version] is shorter than most comparable sections in existing statutes, *but is fully as broad*." Draftsmen's Commentary to § 408, L. Loss, Commentary on the Uniform Securities Act 143 (1976). [Emphasis added]

As shown above, provisions similar to Section 408 of the Uniform Act have been interpreted by the Federal Courts to include the Administrator's right to seek disgorgement. If, as stated in the Draftsmen's Commentary, the intent in drafting the Uniform provision was to make it fully as broad as similar existing provisions, then surely the Uniform provision would encompass the same rights as those under the existing statutes referred to. For this reason and for the reasons outlined above, we hold that the District Courts of the State of Oklahoma have the power to require those in violation of the Oklahoma Securities Act to disgorge themselves of their unlawful profits, and also hold that the Administrator has the power to seek such remedial relief.

For these reasons, we affirm the Certified Interlocutory Order of the Trial Court.

CERTIFIED INTERLOCUTORY ORDER OF THE TRIAL COURT AFFIRMED.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, SIMMS, DOOLIN and OPALA, JJ., concur.