2011 OK CIV APP 15

**PUBLIC SERVICE COMPANY OF OKLAHOMA, Plaintiff/Appellee,**

v.

**DUNCAN PUBLIC UTILITIES AUTHORITY, d/b/a Duncan Power & Light, Defendant/Appellant.**

No. 107,714.

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 29, 2010.

Certiorari Denied Jan. 24, 2011.

Jon E. Brightmire, Tom Q. Ferguson, Doerner, Saunders, Daniel & Anderson, L.L.P., Tulsa, OK, for Plaintiff/Appellee.

Andrew W. Lester, Carrie L. Williams, Lester, Loving & Davies, P.C., Tulsa, OK, for Defendant/Appellant.

WM. C. HETHERINGTON, JR., Judge.

¶ 1 Appellant, Duncan Public Utilities Authority, d/b/a Duncan Power and Light (DP & L) appeals from an October 6, 2009, Order Granting Temporary Injunction.

*FACTS*

¶ 2 Appellee, Public Service Company of Oklahoma (PSO), is an investor owned electric utility company which has provided power within the municipal limits of Duncan by utility franchise since 1973. DP & L is a competing public trust utility, providing electric service and other city utilities in Duncan. Within the city limits of Duncan is an older manufacturing facility known as the Haulmark facility. Since August 1988, PSO provided the electric service to this facility. Over the weekend of September 6th and 7th, 2008, PSO's electric service was disconnected by agents and/or employees of DP & L.

¶ 3 The record shows that in August, 2008, the Duncan Area Economic Development Foundation, Inc. purchased the Haulmark facility. This foundation is a private foundation established to administer a one-half cent sales tax dedicated for economic development in the Duncan area. DP & L claims the foundation as the new owner of the facility requested a change in service from PSO to DP & L. This assertion by DP & L is controverted by the evidence which reflects an August 22, 2008 email contact from Mr. David Yeager as utility director for DP & L to Mr. Clyde Shaw who, at that time, served as city manager for the city of Duncan, general manager for the utilities authority, and was general manager for DP & L as well as for the Duncan Economic Development Authority. These communications show Mr. Yeager suggested to Mr. Shaw that DP & L should be the electric service provider to the Haulmark facility and not PSO. The evidence shows that PSO would not agree to a verbal

request to discontinue service and shows no written approval by PSO to allow DP & L to take over as electric service provider. With no notice to PSO, DP & L disconnected the PSO service over the weekend of September 6 and 7, 2008. Distribution lines and systems were laid and installed to include transformers and all equipment necessary for DP & L to provide service to the economic development foundation facility. Testimony confirmed there had been no formal request from the development foundation authority to either PSO or DP & L to make the change.

¶4 On September 11, 2008 following the weekend change, PSO filed this litigation seeking declaratory relief under 11 O.S.Supp. § 21–121, and 17 O.S.Supp. § 190.7, seeking injunctive relief to prohibit DP & L from violating PSO's utility service rights to the Haulmark facility. Hearing was held and the trial court ruled DP & L had violated 11 O.S.Supp. § 21–121 and 17 O.S.Supp. § 190.7, and granted a temporary injunction enjoining DP & L from providing electric service to the facility and requiring the service be transferred back to PSO. DP & L seeks review of this order by interlocutory appeal.

### STANDARD OF REVIEW

¶5 This appeal presents mixed questions of law and fact.

■ ¶6 The trial court's legal determination that statutory provisions were violated is appealed under *de novo* review. *De novo* review of a lower court legal ruling is plenary, independent, and non-deferential. *Lierly v. Tidewater Petroleum Corp.*, 2006 OK 47, ¶15 139 P.3d 897, 902. We thus review the record independently to determine if the facts demonstrate violations of 11 O.S.Supp. 1998 § 21–121 and 17 O.S.Supp.2001 § 190.7, which then bears upon injunctive criteria.

¶7 In considering the equitable nature of an injunction, the reviewing court must review all evidence on appeal to determine whether the trial court abused its discretion or whether the trial court's decision was clearly against the weight of the evidence.

*Sharp v. 251ST St. Landfill,* 1996 OK 109, 925 P.2d 546.

■ ¶8 In determining whether to issue a temporary injunction, the trial court then should consider four criteria: (1) the applicant's likelihood of success on the merits, (2) irreparable harm to the party seeking relief if injunctive relief is denied, (3) the relative effect on the interested parties, and (4) public policy concerns arising out of the issuance of injunctive relief. *Tulsa Order of Police Lodge No. 93 ex rel. Tedrick v. City of Tulsa,* 2001 OK CIV APP 153, 39 P.3d 152. Entitlement to injunctive relief must be demonstrated by clear and convincing evidence. *Sharp, supra.*

### ANALYSIS

¶9 The seminal legal issue in this case involves whether or not the entities involved in the change of electric utility service agreed by "mutual consent, in writing, to such transaction." An electric utility service provider is prohibited from furnishing electric service to an electric consuming facility which is currently being served by another electric utility provider without written consent of all entities involved in the transaction. 17 O.S.Supp.2001 § 190.7(A); 11 O.S.Supp. 1998 § 21–121. The evidence is not in dispute. There was no written agreement demonstrating mutual consent, in writing, to this change of service.

¶10 The trial court correctly concluded a violation of State law described above as well as Duncan Municipal Code Part 17, Chapter 4, §§ 17.401(B) and 17–402.

¶11 In equity, the trial court then granted temporary injunctive relief. The trial court's order entered on October 6, 2009 reads in part:

The Court finds that the evidence reflects that in violation of 21 O.S. § 121(sic) and 17 O.S. § 190.7, defendant, without the statutory required "mutual consent agreement," knowingly cut and capped Plaintiff's live electric cable and the conduit to a location known as the Haulmark Facility thereby interrupting and preventing Plaintiff from providing electric services to that location; and, installed Defendant's elec-

tric cable, transformer, and the meter for the purpose of providing electric services from Defendant to that location; in effect switching electric utility service at that location, all in violation of the statute.

The Court finds that it is likely that Plaintiff will prevail on the merits of its claim that Defendant has violated 11 O.S. section 21–121 and 17 O.S. section 190.7. On consideration of all the evidence offered and taking into account and considering the requisite criteria and burden necessary for Temporary Injunctive relief, the Court finds that Plaintiff is entitled to Temporary Injunctive relief as requested and the same should be granted.

¶ 12 DP & L argues in its Proposition I that, "The trial court had no authority to issue a temporary injunction." This proposition of error is based upon three arguments: "A. The trial court violated DP & L's right to due process by issuing a temporary injunction against DP & L without notice to DP & L."; "B. PSO failed to prove entitlement either to a TRO or a temporary injunction. The only harm it claimed pending trial was monetary loss for which PSO had an adequate remedy at law. Plus, PSO did not and could not show it would suffer irreparable harm."; and, "C. The sole purpose of temporary injunctive relief is to maintain the status quo. The trial court erroneously issued a temporary injunction changing the status quo."

■ ¶ 13 We first find DP & L's argument asserting failure of due process due to lack of notice to be without merit. Review of the record and the transcript of the proceedings shows PSO's notice pleading asked for both a hearing on temporary restraining order and temporary injunction. As PSO points out in its brief, the trial court initially announced hearing on temporary injunctive relief and all counsel announced ready to proceed. Another opportunity was available to object when the trial court asked if there were any further requests before the hearing was to begin, and both counsel announced there were none. The first indication of objection was during DP & L's closing argument, a discussion was had and the court restated the hearing was one for a temporary injunction

concluding with DP & L's counsel stating that, "I don't want to make a big point about that and I apologize." We find adequate notice to proceed on temporary injunctive relief, no objection made until after the hearing, there was no prejudice demonstrated as to either party and the hearing was in compliance with 12 O.S.Supp. § 1384.1.

■ ¶ 14 Entitlement to injunctive relief was determined by the trial court after hearing competent evidence and considering temporary injunctive relief criteria discussed above. *Oklahoma Gas And Electric Co. v. Total Energy*, 1972 OK 108, 499 P.2d 917, ¶ 36 citing *Bartlesville Electric Light and Power Co. v. Bartlesville Interurban Ry. Co.*, 26 Okl. 453, 109 P. 228 (1910), offers authority for the proposition that an electric utility company is entitled to injunctive relief in a case where another competing company is unlawfully interfering in its business. Further, *Semke v. State Ex Rel. Okl. Motor Vehicle Com'n.*, 1970 OK 15, 465 P.2d 441, ¶ 8, citing *Stuart v. Titus, Okl.*, 1965 OK 38, 400 P.2d 797, holds:

The *Stuart* case does not hold that damages must be proved, but does state that irreparable injury must result before the extraordinary relief of injunction can be granted. Injunctive relief is granted where damages are an inadequate remedy. Suffice it to say in the present case, that a violation of a state statute is an injury to the State and its citizens, and a continuing violation is an irreparable injury for which injunctive relief is available.

*See also, Western Heights Ind. Sch. Dist. No. I–41 v. Avalon Retirement Centers, L.L.C.*, 2001 OK CIV APP 140, ¶ 13, 37 P.3d 962. Violation of a statutory right thus constitutes irreparable harm.

■ ¶ 15 To accept DP & L's argument on the change of status quo would be to condone the wrongful act and confirm that status as the status to be preserved. Equity will not allow one with unclean hands to benefit from its wrongful act. He who seeks equity must do equity and come into court with clean hands. *Story v. Hefner*, 1975 OK 115, 540 P.2d 562. We find DP & L's argument as to

this portion of the proposition to be without merit.

¶ 16 The trial court did not abuse its discretion and the clear weight of the evidence demonstrates clearly and convincingly temporary injunctive relief criteria were established.

■ ¶ 17 Finally, DP & L's Proposition II argues· on appeal an in-depth constitutional challenge to the statutory scheme and that they should not be applied in what DP & L characterizes as a pre-statute special circumstance. DP & L asserts violation of Article 18, §§ 5(a) and 5(b) of the Oklahoma Constitution arguing municipal electors are deprived of the right to grant, extend or renew a franchise. DP & L also argues these laws to be contrary to the constitutional ban on exclusive franchises and the constitutional prohibition against legislation granting exclusive rights, privileges or immunities. A review of the record shows DP & L included the same constitutional propositions in its brief but included no substantive argument during closing arguments. More importantly, this is a constitutional challenge to significant regulation procedures out of the 1997 "Electric Restructuring Act" that resulted in major reform to "restructuring, acquisition, control, or merger of domestic public utilities". This is a matter of great public interest which gives rise to 12 O.S.Supp. § 2024(D) mandates to give notice to the State Attorney General and permit state intervention.

¶ 18 12 O.S. § 2024(D) states:

In any action, suit, or proceeding to which the State of Oklahoma or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of the state affecting the public interest is drawn in question, the court *shall* certify such fact to the Attorney General, and shall permit the State of Oklahoma to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. (Emphasis added) [1]

¶ 19 Notice to the Attorney General was not given and as a failure of constitutional due process is not in question, we decline to undertake analysis of the constitutionality of this statutory regulatory scheme.

**AFFIRMED.**

BUETTNER, P.J., and HANSEN, J., concur.

---

1. 12 O.S.Supp. § 1653 dealing with declaratory determination of validity of municipal ordinances also provides authority for the requirement to give notice to and allow the Attorney General to be heard.