2017 OK CIV APP 42

**OKLAHOMA DEPARTMENT OF SECURITIES EX REL. Irving L. FAUGHT, Administrator, Plaintiff/Appellee,**

**v.**

**SEABROOKE INVESTMENTS, LLC, an Oklahoma Limited Liability Company; Seabrooke Realty LLC, an Oklahoma Limited Liability Company; Oakbrooke Homes LLC, an Oklahoma Limited Liability Company; Bricktown Capital LLC, an Oklahoma Limited Liability Company; Kat Properties LLC, an Oklahoma Limited Liability Company; Cherry Hill LLC, an Oklahoma Limited Liability Company; Cherry Hill Apartments; Tom W. Seabrooke, Individually and as Trustee of the Tom Seabrooke 2007 Revoca-** ble Trust and J. Karyn Seabrooke 2007 Revocable Trust; Judith Karyn Seabrooke, Individually and as Trustee of the Tom Seabrooke 2007 Revocable Trust and J. Karyn Seabrooke 2007 Revocable Trust, Defendants,

and

**Ryan Leonard, Court Appointed Receiver/Appellee,**

and

**Wayne Doyle, Intervenor/Appellant.**

Case Number: 115025

Court of Civil Appeals of Oklahoma, Division No. 2.

Decided: 08/17/2017

Mandate Issued: 09/20/2017

Patricia A. Labarthe, Jennifer Shaw, OKLAHOMA DEPARTMENT OF SECURITIES, Oklahoma City, Oklahoma, for Plaintiff

Mark A. Robertson, Michael Paul Kirschner, ROBERTSON & WILLIAMS, Oklahoma City, Oklahoma, and Jim W. Lee, LEE & KISNER, Oklahoma City, Oklahoma, for Defendants

Robert D. Edinger, ROBERT EDINGER PLLC, Oklahoma City, Oklahoma, for Receiver

Edward O. Lee, William M. Lewis, LEE, GOODWIN, LEE, LEWIS & DOBSON, Edmond, Oklahoma, for Intervenor

OPINION BY KEITH RAPP, JUDGE:

¶1 The trial court intervenor, Wayne Doyle (Doyle), appeals the Order And Judgment Approving Receiver's Report On

Claims And Authorizing Receiver's Distribution To Creditors, insofar as it denied his claim. The other parties to this appeal, as appellees, are the plaintiff, State of Oklahoma Department of Securities (DOS), *ex rel.* Irving L. Faught, Administrator, and Ryan Leonard, Court Appointed Receiver (Receiver).

## BACKGROUND

¶ 2 The history of this case begins with Doyle's investments with another person, Tom Seabrooke (Seabrooke). Bricktown Capital, LLC is the investment of interest here. This entity owned the Bricktown Hotel (Hotel) as its principal asset. Doyle and Seabrooke managed Bricktown Capital as if they were the only owners; however, Seabrooke had taken investments in Bricktown Capital from at least five other persons. Doyle was aware of one of them.

¶ 3 Bricktown Capital had serious financial issues, including mortgages, liens, cash flow, and operations losses. Doyle agreed to be personally liable for a secured loan to the bank and he contributed funds to pay bills, payroll, and the bank loan. In 2012, Doyle received $228,894.00, as a distribution from Bricktown Capital. The hotel sustained substantial storm damages. Partial insurance proceeds from an insurance payment for the storm damages to the Hotel provided the source of the money for the distribution. Repairs were not made, causing portions of the hotel to be closed and thereby adversely affecting revenues.

¶ 4 On April 9, 2014, Doyle caused Bricktown Capital to deliver a note and mortgage to him to evidence a loan. He arrived at the amount by summing the sundry investments he had made with Seabrooke, both Bricktown Capital and others, plus payments on the bank loan and other expenditures. As a result, Doyle's ownership in Bricktown became 85%, a part of which was a collateral ownership.

¶ 5 DOS investigated Seabrooke's activities and filed this action.[1] The trial court appointed Receiver. The trial court established a process for filing claims. Among other actions, Receiver applied to the court for permission to remove the Bricktown Hotel from the receivership because it was a financial burden. The trial court granted the request with the condition that any proceeds of a sale of the Bricktown Hotel in excess of the indebtedness against it would become a part of

---

1. DOS acted under 71 O.S.2011, § 1-603. The statute provides:

   A. If the Administrator believes that a person has engaged, is engaging, or is about to engage in an act, practice, or course of business constituting a violation of this act or a rule adopted or order issued under this act or constituting a dishonest or unethical practice or that a person has, is, or is about to engage in an act, practice, or course of business that materially aids a violation of this act or a rule adopted or order issued under this act or a dishonest or unethical practice, the Administrator may, prior to, concurrently with, or subsequent to an administrative proceeding, maintain an action in the district court of Oklahoma County or the district court of any other county where service can be obtained to enjoin the act, practice, or course of business and to enforce compliance with this act or a rule adopted or order issued under this act.

   B. In an action under this section and on a proper showing, the court may:

   1. Issue a permanent or temporary injunction, restraining order, or declaratory judgment;

   2. Order other appropriate or ancillary relief, which may include:

   a. an asset freeze, accounting, writ of attachment, writ of general or specific execution, and appointment of a receiver or conservator, that may be the Administrator, for the defendant or the defendant's assets,

   b. ordering the Administrator to take charge and control of a defendant's property, including investment accounts and accounts in a depository institution, rents, and profits; to collect debts; and to acquire and dispose of property,

   c. imposing a civil penalty up to a maximum of Five Thousand Dollars ($5,000.00) for a single violation or up to Two Hundred Fifty Thousand Dollars ($250,000.00) for more than one violation; an order of rescission, restitution, or disgorgement directed to a person that has engaged in an act, practice, or course of business constituting a violation of this act or the predecessor act or a rule adopted or order issued under this act or the predecessor act, and

   d. ordering the payment of prejudgment and postjudgment interest; or

   3. Order such other relief as the court considers appropriate.

   C. The Administrator may not be required to post a bond in an action or proceeding under this act.

the Receiver's assets. The Bricktown Hotel did sell for $187,858.00 more than the indebtedness. Receiver took possession of the funds remaining after payment of the Bricktown Hotel's debt.

¶ 6 A number of claims were filed with Receiver. The claims totaled in excess of $15,000,000.00, and the assets available to pay claims amounted to $1,735,929.00. Doyle filed a claim for $3,288,489.38. He based his claim on the April 2014 note and mortgage and the sum total of sundry payments and expenditures relating to Bricktown Capital, but he included payments made to Seabrooke individually and to other entities.

¶ 7 Doyle sought to have the $187,858.00 excess sale proceeds paid to him. After a hearing in August 2015, the trial court reduced Doyle's claim to $2,355,200.00, and found that $681,577.00 had been paid.

¶ 8 The trial court also reclassified Doyle's entire claim as expenditures constituting capital contributions to Bricktown Capital. Doyle's appeal does not challenge this ruling and it is, therefore, final. As a result, Doyle is not a general creditor of Bricktown Capital and cannot claim, as a creditor, any distribution from Receiver. Doyle claimed the $1.67 million dollar balance as an owner.

¶ 9 Receiver filed a final report. In that report, Receiver denied Doyle's entire claim. Doyle objected. After a hearing, the trial court entered extensive findings of fact and conclusions of law. The trial court confirmed the previous ruling that Doyle's claim constituted contributions to capital. Along with nine other claimants, this placed him in the class of claimants whose claim was deemed to be contributions to capital and their claims became secondary to the payment of Bricktown Capital's obligations.

¶ 10 Next, the trial court reviewed and applied the doctrine of equitable subordination. The trial court found that Doyle was an "insider" as to Bricktown Capital. In its ruling, the trial court specified actions by Doyle and found that these actions constituted inequitable conduct. The trial court concluded

that "Doyle's conduct was sufficiently inequitable and unfair to justify subordinating his claims to all other general creditors." Continuing, the trial court found that Doyle's "conduct resulted in substantial harm to other investors."[2] The trial court denied Doyle's entire claim.

¶ 11 Doyle appeals. Here, "Doyle requests that this Court determine he is entitled to share pro-rata with other members of the same class i.e., capital contributors."[3] He maintains that the trial court's ruling is not supported by the evidence in general, or, alternatively, that the decision failed to determine the amount of harm to other investors.

¶ 12 Doyle also contends that a portion of his claim represented funds expended before he could be considered an "insider."[4] He listed three expenditures totaling $1.1 million dollars made to entities other than Bricktown Capital and to Seabrooke, individually.

¶ 13 Receiver and DOS dispute Doyle's characterization of the evidence. They argue it is sufficient to merit the trial court's decision, including equitably subrogating his claim and denying it.

## STANDARD OF REVIEW

■ ¶ 14 This receivership is an equitable proceeding. *Morris v. Pierce*, 1940 OK 405, Syl. 2, 188 Okla. 396, 110 P.2d 294, Syl. 2 ("A hearing of exceptions filed to the report of a receiver of the sale of receivership property is of equitable cognizance, and a judgment therein will not be reversed on appeal unless it is against the clear weight of the evidence."). In actions of equitable cognizance, the judgment made by the trial court will be reversed if it is clearly contrary to the weight of the evidence or contrary to accepted principles of equity or rules of law. *In re Estate of Eversole*, 1994 OK 114, ¶ 7, 885 P.2d 657, 661. The case of *Hitt v. Hitt*, 1953 OK 391, 258 P.2d 599, held that it is for the trial court in a case of equitable cognizance to determine the credibility of the witnesses and the weight and value to be given to the

---

2. Journal Entry, § 8, pp. 8–9.

3. Doyle Brief, p. 7.

4. Doyle Brief, Proposition IV, p. 13

testimony. Where the evidence is in conflict, the trial court's determination will not be set aside unless the determination is clearly against the weight of the evidence.

¶ 15 The Appellate Court reviews rulings on issues of law by a *de novo* standard without deference to the trial court. *Glasco v. State ex rel. Oklahoma Dept. of Corrections*, 2008 OK 65, 188 P.3d 177.

## ANALYSIS AND REVIEW

¶ 16 In order to ultimately deny Doyle's claim, the trial court first reclassified his claim from creditor to contribution to capital. This ruling is now final and it placed Doyle in a subordinate category regarding distributions from Receiver.[5]

¶ 17 Next, the trial court utilized the doctrine of equitable subordination as a remedy to subordinate Doyle's entire claim to the claims of all other creditors, including the other claims who were capital contributors. It appears that the available assets were exhausted in payment of the priority claims and Receiver's report was approved. Thus, the trial court denied Doyle's entire claim.

¶ 18 Here, Doyle seeks to have his claim, or at least a portion of the claim, treated in the category of all capital contributors and share, pro rata, with that class of claimants. In order to reach this result, one or both, of two results must be reached; the doctrine of equitable subrogation is not applicable to these facts, or, if it is a part of Oklahoma jurisprudence as an equitable remedy under the Oklahoma Uniform Securities Act of 2004, 71 O.S.2011, § 1-101, and following, the evidence does not support the application of the doctrine here.[6]

### A. Equitable Subrogation: Origin and Definition

¶ 19 Reclassification of a debt as a capital contribution is distinct from application of equitable subrogation. Reclassification examines the transaction for its true nature to conclude that what is called a "debt" is truly a capital contribution under the facts. Equitable subrogation examines the creditor's conduct and, where the creditor is guilty of inequitable conduct, that creditor's claim will be subordinated to the other claims in the matter under consideration. *Hedged–Investments Associates, Inc.*, 380 F.3d at 1297 [citing *In re Autostyleplastics, Inc.*, 269 F.3d 726 (6th Cir. 2001) ].

¶ 20 Equitable subrogation has its origin in bankruptcy and the general bankruptcy principle of fairness and equity among creditors.[7] The United States Supreme Court set out the principles of equitable subrogation in *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). Describing bankruptcy courts as courts of equity, the Court ruled that the bankruptcy court has the equitable power to subordinate a creditor's claim when the facts and circumstances reflect inequitable conduct on the part of the creditor.

¶ 21 The generally accepted rule is that there are three constituents to the standard for establishing equitable subordination in the bankruptcy setting.

(1) the claimant must have engaged in some type of inequitable conduct;

(2) the misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant; and

(3) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act.

*In re Autostyle Plastics, Inc.*, 269 F.3d at 744 (citations omitted).

¶ 22 The Court continued:

Satisfaction of this three-part standard does not mean that a court is *required* to equitably subordinate a claim, but rather

---

**5.** "Reclassification" and its proof and function are discussed at length in the case of *In re Hedged–Investments Associates, Inc.*, 380 F.3d 1292 (10th Cir. 2004).

**6.** Whether equitable subrogation has broader application than the Act is a question outside the scope of this Opinion.

**7.** For an in depth review of the history and applications of the doctrine see Jeremy W. Dickens, *Equitable Subordination and Analogous Theories of Lender Liability: Toward A New Model of Control*, 65 Tex. L. Rev. 801 (1987).

that the court is *permitted* to take such action.

When reviewing equitable subordination claims, courts impose a higher standard of conduct upon insiders. Indeed, "[a] claim arising from the dealings between a debtor and an insider is to be rigorously scrutinized by the courts." Therefore, "if the claimant is an insider, less egregious conduct may support equitable subordination."

*In re Autostyle Plastics, Inc.*, 269 F.3d at 744–45 (citations omitted).

¶ 23 The case here under review is a receivership initiated by DOS under the Oklahoma Uniform Securities Act of 2004 (OUSA), and not a bankruptcy. Thus, consistency with the provisions of the Bankruptcy Act is not a factor for consideration. However, the inquiry now moves to consider whether the equitable subrogation doctrine may be used in this receivership action.

### B. Equitable Subrogation as a Remedy Under OUSA

¶ 24 DOS has authority under OUSA to file for a receivership. 71 O.S.2011, § 1-603(B)(2)(a). This receivership is an equitable proceeding. *Morris v. Pierce*, 1940 OK 405, Syl. 2, 188 Okla. 396, 110 P.2d 294, Syl. 2. Receiver has the power to bring proceedings for equitable relief. *Oklahoma Dept. of Securities ex rel. Faught v. Blair*, 2010 OK 16, 231 P.3d 645.

¶ 25 A court of equity has broad equitable powers to fashion relief that will address the issue before the court. *Swann v. Charlotte–Mecklenburg Bd. of Educ.*, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). An equity court is not bound by the rigid rules of common law but may adapt its relief and mold its decisions to satisfy the requirements of the case to protect and conserve the entities of the parties. 27 Am. Jur. 2nd *Equity* §§ 76–77 (2008). In an action brought

under the previous Oklahoma Securities Act, the Oklahoma Supreme Court held:

[W]e hold that the District Courts of Oklahoma are empowered to do equity in actions brought under the Oklahoma Securities Act. Once the equity jurisdiction of the District Court has properly been invoked, the Court possesses the necessary power to fashion appropriate remedies. We hold this power includes the power to require "disgorgement" of unlawful profits in appropriate cases.

*State ex rel. Day v. Southwest Mineral Energy, Inc.*, 1980 OK 118, ¶ 19, 617 P.2d 1334, 1338.

¶ 26 Therefore, this Court holds that the District Courts, in actions under OUSA, have the equitable power to utilize the equitable subrogation doctrine when fashioning appropriate remedies in the case. The remedy is to be consistent with OUSA, rather than the bankruptcy laws.

### C. Application of Equitable Subrogation to Doyle

¶ 27 In order to apply the remedy, first Doyle must have engaged in some type of inequitable conduct. In addition, an insider is subject to a higher standard of conduct. *Hedged–Investments Associates, Inc.*, 380 F.3d at 1301; *In re Autostyle Plastics, Inc.*, 269 F.3d at 745. The trial court found both inequitable conduct and that Doyle was an insider.

¶ 28 In his appellate arguments, Doyle does not dispute his financial and personal history with Seabrooke and Bricktown Capital. Doyle takes issue with five of the trial court's fact findings as not supported by evidence. However, the trial court referenced the evidence and review of the references show that the trial court's challenged fact findings and conclusions of law, are not against the clear weight of the evidence.

¶ 29 Doyle disputes his status as an "insider" regarding Bricktown Capital.[8] Alterna-

---

8. It appears that DOS has not defined "insider" in its regulations. Title 60, Oklahoma Administrative Code.

This Court notes the definition of "insider" in the Oklahoma Uniform Fraudulent Transfer Act, 24 O.S.2011 § 113(7).

7. "Insider" includes:

a. if the debtor is an individual:
(1) a relative of the debtor or of a general partner of the debtor, or
(2) a partnership in which the debtor is a general partner, or
(3) a general partner in a partnership described in division (2) of this subparagraph, or

tively, he maintains that he was not an "insider" initially when he invested, so those transactions should not be subject of heightened scrutiny.

¶ 30 In the absence of a specific definition of "insider" for purposes of applying equitable subordination, this Court holds that "insider" includes the definitions in Section 113(7) and the general definition of one who has a sufficiently close relationship with the entity or debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor.

¶ 31 Doyle's transactions regarding Bricktown Capital are not disputed. Thus, he positioned himself as controlling owner and guaranteed its bank loan. Storm damage insurance proceeds were paid to him, rather than being used for storm damage repairs. Doyle combined his investments and expenditures with Seabrooke and Bricktown Capital and created a promissory note and mortgage from Bricktown Capital to cover those sums. The trial court's conclusion that Doyle is an insider is not against the clear weight of the evidence nor contrary to law.[9]

¶ 32 Doyle further maintains that he was not always an insider and that he expended funds prior to any time he could be considered an insider. Moreover, he argues that these expenditures served purposes other than Bricktown Capital. This argument ignores the undisputed fact that Doyle incorporated these other expenditures into his scheme to have Bricktown Capital execute a promissory note and mortgage evidencing a loan from him to Bricktown Capital. Thus, by his own acts, Doyle treated all of his expenditures as part of Bricktown Capital. The trial court was fully justified under the evidence to conclude that Doyle is an insider and that all of his claim is subject to scrutiny based upon his insider status.

¶ 33 This brings the review to the question of whether Doyle's conduct constitutes inequitable conduct sufficient to apply the equitable subrogation remedy. The test is set out in *Hedged–Investments Associates, Inc.*, 380 F.3d at 1301–02 (citations omitted).

> When examining a transaction for evidence of inequitable conduct, this Circuit has joined other Courts of Appeals in applying different levels of scrutiny to "insiders" and "non-insiders" of the debtor corporation. Where the claimant is an insider or a fiduciary, the party seeking subordination need only show some unfair conduct, and a degree of culpability, on the part of the insider. If the claimant is not an insider or a fiduciary, however, the party seeking subordination must "demonstrate even more egregious conduct such as gross misconduct tantamount to fraud, misrepresentation, overreaching or spoliation."

¶ 34 The acts of Doyle in this matter meet the test of unfair conduct and his culpability is clear. The conclusion that Doyle is guilty of culpable, inequitable conduct of the caliber necessary is not against the clear weight of the evidence or contrary to law.

¶ 35 The next criterion is that Doyle's misconduct must have resulted in injury to the

(4) a corporation of which the debtor is a director, officer or person in control;
    b. if the debtor is a corporation:
    (1) a director of the debtor, or
    (2) an officer of the debtor, or
    (3) a person in control of the debtor, or
    (4) a partnership in which the debtor is a general partner, or
    (5) a general partner in a partnership described in division (4) of this subparagraph, or
    (6) a relative of a general partner, director, officer, or person in control of the debtor;
    c. if the debtor is a partnership:
    (1) a general partner in the debtor, or
    (2) a relative of a general partner in, a general partner of, or a person in control of the debtor, or
    (3) another partnership in which the debtor is a general partner, or

    (4) a general partner in a partnership described in division (3) of this subparagraph, or
    (5) a person in control of the debtor;
    d. an affiliate, or an insider of an affiliate as if the affiliate were the debtor; and
    e. a managing agent of the debtor.
 The Bankruptcy Code and the federal courts recognize and define both statutory and nonstatutory "insiders." *In re Village of Lakeridge, LLC*, 814 F.3d 993, 999 (9th Cir. 2016) ("An insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms [sic] length with the debtor.") (certiorari granted on a separate issue, —— U.S. ——, 137 S.Ct. 1372, 197 L.Ed.2d 553).

**9.** Conclusion of Law, No. 7.

creditors of the bankrupt or conferred an unfair advantage on him. *Hedged–Investments Associates, Inc.*, 380 F.3d at 1301; *In re Autostyle Plastics, Inc.*, 269 F.3d at 744. Moreover, the trial court's detail of circumstances constituting harm and unfair advantage sets out a sufficient basis to satisfy this criterion.[10] The list is supported by the evidence and the conclusion is not contrary to law. Moreover, substantial parts of these facts are not in dispute, such as his preferential payment from the insurance proceeds; his attempt to place himself in a preferred secured position as to his expenditures; and diversion of insurance proceeds from needed repairs to payment of the bank loan for which he was also liable.

¶ 36 The final requirement from the cases is that application of equitable subrogation must be consistent with the Bankruptcy Code. That requirement is replaced here by requiring that the remedy be consistent with the OUSA. The Act does not provide for any limitations or exceptions or ban on the use of the remedy. Here, the application of the remedy by the trial court is consistent with general equity principles and those principles are consistent with the purpose of having a receiver in cases such as this.

¶ 37 Therefore, the judgment of the trial court applying the doctrine of equitable subrogation is not against the clear weight of the evidence or contrary to law.

### D. Claim of Unequal Treatment

¶ 38 "[A] claim or claims should be subordinated only to the extent necessary to offset the harm which the bankrupt and its creditors suffered on account of the inequitable conduct." *In re Mobile Steel Co.*, 563 F.2d 692, 701 (5th Cir. 1977). The remedy is not penal. *Id.*

¶ 39 Doyle asserts that he was treated unequally in the class of claimants all of whom had their claims treated as contributions to capital. Doyle's argument is rejected. His inequitable conduct called for application of the equitable subrogation doctrine. The treatment he received occurred as a consequence of his conduct, including his effort to incorporate all of his expenditures with Sea-

brooke and Bricktown Capital into a note and mortgage in his favor.

¶ 40 Equitable subrogation of his entire claim did not occur because of unequal treatment of persons similarly situated.

## SUMMARY AND CONCLUSION

¶ 41 The Oklahoma Department of Securities initiated a receivership proceeding in connection with the activities of Tom Seabrooke and numerous entities, one of which was Bricktown Capital, LLC. Wayne Doyle invested with Seabrooke and was involved in Bricktown Capital to the extent that he was deemed to be an insider.

¶ 42 Claims arising from Bricktown Capital were filed with Receiver. Claims substantially exceeded assets available. Doyle filed a claim. After hearings, the trial court concluded that his claims would be reclassified from debt claims to contribution to capital claims. The trial court then applied the doctrine of equitable subrogation and subrogated Doyle's claim to all other claims, including claims by others contributing capital to Bricktown Capital.

¶ 43 Equitable subrogation has its beginning and general application in bankruptcy matters. This Court holds that the receivership here is an equity proceeding and that the equity court has the power to fashion appropriate remedies. Therefore, the trial court was authorized to apply the doctrine in the context of a securities receivership matter.

¶ 44 Application of the doctrine requires a finding of inequitable conduct and harm to other claimants. The former finding has less strict application when an insider is the subject of the doctrine. Here, the trial court found Doyle to be an insider as to Bricktown Capital and such finding is not against the clear weight of the evidence or contrary to law.

¶ 45 The trial court further found that Doyle's actions amounted to inequitable con-

10. Conclusion of Law, No. 8.

duct and subrogated all of his claims. This finding also is not against the clear weight of the evidence or contrary to law.

¶ 46 This Court further finds that Doyle has not been treated disparately and the subrogation of his entire claim is not an excessive or punitive remedy.

¶ 47 The judgment of the trial court is affirmed.

¶ 48 **AFFIRMED.**

FISCHER, P.J., and GOODMAN, J., concur.